REITLER KAILAS & ROSENBLATT LLP
Robert William Clarida
885 Third Avenue
20th Floor
New York, NY 10022
Phone: (212) 209-3044
Fax: (212) 371-5500
Email: rclarida@reitlerlaw.com
*Attorneys for Plaintiff Deborah Roberts*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
DEBORAH ROBERTS                          CIVIL ACTION NO.: 22-4516

                Plaintiff,

      -against-                           **COMPLAINT**

RICHARD BEAVERS GALLERY,                 **JURY TRIAL DEMANDED**
RICHARD BEAVERS, and LYNTHIA EDWARDS

                Defendants.
---------------------------------------------------------------x

Plaintiff Deborah Roberts ("Plaintiff" or "Ms. Roberts"), by her attorneys, Reitler Kailas & Rosenblatt LLP, alleges as follows:

## NATURE OF ACTION

1. Plaintiff is a well-known American visual artist, whose original collages are highly sought after by museums and collectors and regularly sell for significant sums in both the primary and secondary market.

2. Ms. Roberts' collages are in the collections of the San Francisco Museum of Modern Art, the Brooklyn Museum, the Los Angeles County Museum of Art, the Studio Museum in Harlem, the Whitney Museum of American Art, and the Institute of Contemporary Art, Boston.

3. Ms. Roberts' collages combine found and manipulated fragments of photographs and fabric swatches with hand drawn and painted details, and feature Black children and adolescents as subjects, either individually or in small groupings, set against solid, unpatterned backgrounds.

4. Representative examples of Ms. Roberts' collages are included in the catalog for her 2019 exhibition entitled *If they come* at the Stephen Friedman Gallery in London, England, attached hereto as Exhibit 1, encompassing the collages entitled When you see me; Armor; Red, White and Blue; Hip bone; Mixed hues; Man[ly]; The burden; I am not a man I'm dynamite; King me; The soil; Ulysses; Rebels; Don't let go (RR); The hands of time (RR); The inbetween; At any cost; Give it a try (RR); After Stephen; After the thunder (RR).

5. Ms. Roberts' collages have been the subject of extensive media commentary and coverage, including profiles in the *New York Times* and *Vice* magazine, and she was commissioned to create a collage portrait of Trayvon Martin for the cover of *New York Magazine* in honor of the 10-year anniversary of Black Lives Matter, published in February 2022. She is the recipient of multiple awards and grants, including a major honor from Anonymous Was a Woman in 2018.

6. Ms. Roberts seeks injunctive relief and damages for, *inter alia*, willful copyright infringement by the Defendants, Richard Beavers Gallery ("Richard Beavers Gallery"), Richard Beavers ("Mr. Beavers") and Lynthia Edwards ("Ms. Edwards")(Richard Beavers Gallery, Mr. Beavers and Ms. Edwards are referred to collectively hereafter as "Defendants"), arising from Defendants' unauthorized preparation, reproduction, public display, advertising, and public distribution of collages that are copied from and substantially and confusingly similar to several series of original Deborah Roberts collages (the "Roberts Collages") including without

limitation the Roberts Collages registered in the U.S. Copyright Office as registration number VAu001447951 and VA0002308317, as more fully identified on Exhibit 2 (the "Registered Collages").

7. Defendants' activities as alleged herein have continued after Defendants were notified of the infringing nature thereof, including without limitation by means of correspondence by text message from Ms. Roberts to Mr. Beavers, and subsequently by mail and email from Ms. Roberts' counsel dated January 18, 2021 (attached as Exhibit 3) and November 4, 2021 (attached as Exhibit 4), all in violation of the United States Copyright Act, 17 U.S.C. § 101 et seq. (the "Copyright Act").

8. Plaintiff further seeks injunctive relief and damages for willful infringement of Ms. Roberts' distinctive, widely-recognized, non-functional, unregistered trade dress in the overall appearance of the Roberts Collages (the "Roberts Trade Dress"), in violation of United States trademark law as codified in 15 U.S.C. § 1051 et seq. (the "Lanham Act").

9. Plaintiff further seeks injunctive relief and damages for violation of Ms. Roberts rights under New York General Business Law § 368-d and New York General Business Law § 349.

10. As stated in greater detail below, Defendants, without any authority from the Plaintiff, have: (A) prepared, reproduced, publicly displayed and publicly distributed a number of collages copied from and substantially similar to the Roberts Collages (the "Infringing Collages"), including without limitation the Infringing Collages entitled Calico, Calico II, Jewel, Hey Y'all, Whew Child, Y'All Ready, Back Up Plan, Pose for the Picture, and Look; (B) marketed the unauthorized Infringing Collages under the Roberts Trade Dress, or a confusingly similar imitation of the Roberts Trade Dress, thus causing multiple documented instances of actual

confusion and a likelihood of confusion among members of the relevant public; (C) engaged in deceptive acts or practices in the conduct of business, trade or commerce in the State of New York and this judicial district; and (D) diluted the distinctive quality of the Roberts Trade Dress under the law of the State of New York.

11. Plaintiff is the owner of copyright in all of the Deborah Roberts collages referenced in this Complaint, including without limitation the Registered Collages.

12. Plaintiff is the owner of all rights in the Roberts Trade Dress, having never conveyed ownership therein to any other party.

13. Plaintiff seeks legal and equitable relief to remedy and prevent Defendants' willful infringement of the Plaintiff's copyrights, the Roberts Trade Dress and Roberts' rights against unfair competition and dilution under New York law. Plaintiff therefore requests an order: (1) declaring that Defendants' conduct as alleged willfully infringes Plaintiff's copyrights in the Registered Collages in violation of the Copyright Act; (2) declaring that Defendants' conduct as alleged willfully infringes the Roberts Trade Dress in violation of the Lanham Act; (3) declaring that Defendants' conduct as alleged willfully infringes Plaintiff's rights against unfair competition and dilution under the laws of the State of New York; (4) prohibiting Defendants from further infringement of the Plaintiff's copyrights, or the Roberts Trade Dress, or Plaintiff's rights under the laws of the State of New York against unfair competition and dilution; (5) requiring the impoundment and destruction of all copies of the Infringing Collages in Defendants' custody or control; (6) awarding actual damages and profits to Plaintiff, to the extent permitted under applicable law, in an amount to be determined at trial but which upon information and belief exceeds one million dollars; (7) awarding costs and attorneys' fees to Plaintiff, to the extent permitted under applicable law.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action under the copyright and trademark laws of the United States, 28 U.S.C. § § 1331, 1338, and 1367.

15. Upon information and belief, this Court has personal jurisdiction over the Defendants because Ms. Edwards, Mr. Beavers, and Richard Beavers Gallery have distributed the Infringing Collages in New York and the Eastern District of New York, or have authorized others to do so, and are otherwise regularly transacting business in this State and in the Eastern District of New York.

16. Venue is proper in this District under 28 U.S.C. § 1391(b), 28 U.S.C. § 1391(c) and 28 U.S.C. § 1400(a).

## PARTIES

17. Ms. Roberts is an individual who resides in Austin, Texas.

18. Upon information and belief, Richard Beavers Gallery is a sole proprietorship engaged in the business of selling art, having a principal place of business at 408 Marcus Garvey Boulevard, Brooklyn NY 11216.

19. Upon information and belief, Mr. Beavers is the owner of Richard Beavers Gallery having knowledge of and substantial participation in all of the activities of Defendants alleged herein, and having a principal place of business or regularly doing business in this judicial district.

20. The profile for Mr. Beavers on the LinkedIn website identifies Mr. Beavers as the "principal owner" of Richard Beavers Gallery.

21. Mr. Beavers has engaged in direct electronic correspondence with Plaintiff in connection with the activities of Richard Beavers Gallery alleged herein to be infringing.

22. Prior to the commencement of the infringing acts of Defendants described herein, Mr. Beavers communicated directly with Plaintiff and asked that she allow her collages to be sold at Richard Beavers Gallery.

23. Written communications from Mr. Beavers to Plaintiff included *inter alia* a text message dated April 13, 2020 in which Mr. Beavers wrote "so many of my clients have you on their wishlist of artists whose work they would like to acquire for their collections."

24. Ms. Roberts declined Mr. Beavers' request, whereupon, on information and belief, Mr. Beavers and/or Richard Beavers Gallery made arrangements with Ms. Edwards to create and sell the Infringing Collages.

25. Accordingly, upon information and belief, Mr. Beavers at all relevant times had actual or constructive knowledge of the activities of Defendants complained of herein, whether or not Richard Beavers Gallery has separate existence as a legal entity under the laws of New York or any other state.

26. Upon information and belief, Mr. Beavers at all relevant times participated materially in the activities of Defendants complained of herein, whether or not Richard Beavers Gallery has separate existence as a legal entity under the laws of New York or any other state.

27. Upon information and belief, Mr. Beavers at all relevant times had the right to control the activities of Defendants complained of herein, whether or not Richard Beavers Gallery has separate existence as a legal entity under the laws of New York or any other state.

28. Upon information and belief, Mr. Beavers at all relevant times had the ability to control the activities of Defendants complained of herein, whether or not Richard Beavers Gallery has separate existence as a legal entity under the laws of New York or any other state.

29. Upon information and belief, Mr. Beavers at all relevant times realized or stood to realize a direct financial benefit from the activities of Defendants complained of herein, whether or not Richard Beavers Gallery has separate existence as a legal entity under the laws of New York or any other state.

30. Accordingly, Mr. Beavers is contributorily and/or vicariously liable for any damages that may be awarded in this action, if not directly liable for such damages, whether or not Richard Beavers Gallery has separate existence as a legal entity under the laws of New York or any other state.

31. Upon information and belief, Ms. Edwards is an individual regularly doing business in this judicial District, including without limitation pursuant to one or more contractual or other agreements with Richard Beavers Gallery or Mr. Beavers to promote, display and distribute the Infringing Collages in this judicial district, and in other jurisdictions with the knowledge and substantial participation of Mr. Beavers and Richard Beavers Gallery.

## FACTS COMMON TO ALL CAUSES OF ACTION

*The Registered Collages*

32. The Registered Collages are original works of authorship.

33. The Registered Collages have been fixed in a tangible medium of expression.

34. The Registered Collages contain substantial amounts of material created by the Plaintiff's own artistic judgment and creativity.

35. The Registered Collages are copyrightable subject matter under the laws of the United States.

36. The registration of the Registered Collages with the U.S. Copyright Office within five years of the initial publication of such works gives rise to a statutory presumption of the validity of the copyrights in such works and of all facts stated in the registration certificates.

37. No use of the Registered Collages by Defendants has ever been authorized by Plaintiff.

*Defendants' Copyright Infringement*

38. Upon information and belief, Defendants had a reasonable opportunity to view the Registered Collages prior to the making of the Infringing Collages, because photographs of the Registered Collages were widely disseminated.

39. Upon information and belief, not later than June 2020, the Infringing Collages were publicly displayed and sold or offered for sale to the public by Richard Beavers Gallery and/or Mr. Beavers in his individual capacity.

40. Upon information and belief, the Infringing Collages continue to be publicly displayed or sold or offered for sale by Richard Beavers Gallery and/or Mr. Beavers in his individual capacity, both on the Richard Beavers Gallery premises and at other locations.

41. Promptly after becoming aware of Defendants' unauthorized use of the Registered Collages in the Infringing Collages, Ms. Roberts and her counsel contacted Defendants and advised Defendants that the use of any of Plaintiff's artwork in the Infringing Collages was unauthorized.

42. In a text message to Plaintiff, Mr. Beavers acknowledged "I absolutely see the similarities and influence" between the Plaintiff's collages and the Infringing Collages.

43. The Infringing Collages are copied from and substantially similar to the Registered Collages.

44. In one or more instances, the Defendants' copying by the Infringing Collages has gone so far as to incorporate the same photographic source material that Ms. Roberts selected for inclusion and use in the Registered Collages.

45. Plaintiff has suffered, and continues to suffer, from the infringing activities of Defendants.

*Defendants' Unfair Competition And Trade Dress Infringement*

46. Ms. Roberts sells and has sold one or more series of fine-art collages, identified above as the Roberts Collages, including without limitation the Registered Collages, which are of a distinctive, nonfunctional overall appearance, as depicted in the exemplary photographs from the collection entitled *If they come*, attached as Exhibit 1 (collectively, "Trade Dress").

47. Since at least 2018, long prior to the acts of Defendants complained of herein, and continuing to the present, the Roberts Collages have featured a consistent Trade Dress as identified herein.

48. The U.S. Patent and Trademark Office classifies collages as goods within International Class 16.

49. The Trade Dress encompasses the total overall appearance the Robert Collages, comprising a combination of the following specific elements:

- subject matter featuring Black children or adolescents, either individually or in small groupings
- black-and-white or high-contrast photographic fragments of facial features, hair, arms, legs, hands and feet, assembled in angular, unnatural arrangements
- colorful, patterned fabric swatches
- hand-drawn or hand-painted details

- plain, unpatterned backgrounds

50. The Trade Dress, viewed in its entirety, creates a distinctive overall visual impression that is uniquely associated with Ms. Roberts and serves as a source identifier for the Roberts Collages.

51. The Trade Dress is distinctive, because it is unlike the appearance of numerous other competing series of collages, including series by artists other than Ms. Edwards that are marketed by Mr. Beavers and Richard Beavers Gallery.

52. The Trade Dress of the Roberts Collages is non-functional, because the specific appearance of the Roberts Collages does not confer a significant, non-reputational advantage over alternative designs for collages.

53. Ms. Roberts has developed and promoted the Trade Dress at considerable expense, making a significant investment in developing an overall look for her Collages that is distinctive and immediately recognized by members of the relevant public as an indicator that Ms. Roberts is the source of the Roberts Collages.

54. To date, Ms. Roberts' sales of the Roberts Collages have been highly successful, and the Roberts Collages have been promoted and sold at prestigious galleries and art fairs in the U.S. and internationally, including without limitation the Chicago Art Fair and Untitled Art Miami Beach.

55. The Trade Dress has become widely known in the contemporary art marketplace for collages by reason of Ms. Roberts' years of extensive sales and promotion of the Roberts Collages and the critical and public acclaim and recognition the Roberts Collages have received.

56. Unsolicited third party reporting about the Roberts Collages has referred to their "*trademark* collage-and-paint style," established long before the Defendants' Infringing Collages appeared on the market. *See* Katie Friel, "Dazzling San Antonio Art Museum Adds Landmark Texas Artist to Collection," *Culture Map San Antonio* (Feb. 26, 2021)(emphasis added).

57. As a result of Ms. Roberts' efforts in developing and promoting the Trade Dress and the Roberts Collages, consumers have come to associate and identify the Collages as products of high quality that originate from a single source with a reputation for quality, namely Ms. Roberts.

58. Upon information and belief, beginning in approximately June 2020, after the Roberts Collages had become widely recognized in the relevant marketplace for fine-art collages, Ms. Edwards largely discontinued her previous artistic practice and, together with the other Defendants, began marketing one or more unauthorized series of collages that closely mimic the Trade Dress.

59. Upon information and belief, Defendants found that the more the Edwards collages resembled the Roberts Collages, the more successful the Edwards collages became with purchasers.

60. Upon information and belief, since beginning to create the Infringing Collages, Defendants have aggressively marketed such collages, including by promoting them at one or more high-profile national art fairs at which Ms. Roberts has also promoted and sold the Roberts Collages, including without limitation the Chicago Art Fair and Untitled Art Miami Beach.

61. Upon information and belief, such marketing has resulted in a waiting list of collectors who seek to purchase the Infringing Collages, and upon information and belief

Defendants have also begun marketing the Infringing Collages to hotel chains and other high-volume purchasers.

***Defendants' Actions Have Caused Actual Confusion***

62. The Defendants' imitation of the Trade Dress has caused actual consumer confusion including actual confusion among one or more members of the relevant public, who have mistakenly believed the Infringing Collages to have originated with Ms. Roberts.

63. One recent example of such actual confusion is attached hereto as Exhibit 5, a social media message from a patron of a Brooklyn art-framing business who mistakenly "tagged" Ms. Roberts in the context of praising the framer for its display of an Infringing Collage that the user believed to be a Roberts Collage.

64. As shown on Exhibit 5, the social media user apologized when Ms. Roberts called the user's confusion to their attention, with the user saying it was not their intention to highlight the work of a "copycat artist," Ms. Edwards.

65. Thus even a sophisticated purchaser familiar with the Roberts Collages believed, mistakenly, that one of the Infringing Collages was a Roberts Collage, even though the Infringing Collage was signed "Lynthia Edwards."

66. Another recent example of actual confusion is attached hereto as Exhibit 6, in which a third party sent an unsolicited communication to Ms. Roberts after encountering an Infringing Collage at Untitled Art Miami Beach in 2021, writing specifically "I was confused" by seeing the Infringing Collage at that event.

67. A third recent example of actual confusion is attached hereto as Exhibit 7, in which a third party sent an unsolicited communication to Ms. Roberts after encountering an Infringing Collage by Ms. Edwards on Instagram, writing specifically "I keep seeing this girl on

12

IG with the sponsored ads and *her work looks just like yours… I thought that's who it was*." (emphasis added).

68. Upon information and belief, one or more in-person visitors to Defendants' gallery and/or art fair exhibitions of the Infringing Collages have spoken with Defendants' representatives about the works on display, under the false impression that the Infringing Collages were Roberts Collages, and on one or more occasions Defendants' representatives have not corrected such visitors' confusion about the origin of the Infringing Collages.

69. The confusingly similar trade dress of the Infringing Collages has also been recognized in unsolicited media coverage by observers who comment on the relevant art market.

70. For one example, in a recent edition of *Sugarcane Magazine*, www.sugarcanemag.com/2022/01/ethics-and-controversy-reviewing-appropriation-in-black-art-by-angela-n-carroll, accessed July 30, 2022, Angela N. Carroll published an article dated January 13, 2022 entitled "Ethics and Controversy: Reviewing Appropriation in Black Art," attached as Exhibit 8 hereto ("Carroll Article").

71. The Carroll Article documented a "notable uptick in the display of lesser-known artists whose styles were *almost identical* to prominent African-American artists" (emphasis added).

72. The Carroll Article singled out the Defendants' Infringing Collages, shown and sold at Untitled Art Miami Beach in 2021, as mere "Deborah Roberts shadow play" and "perhaps the most disturbing and disturbingly obvious" example of appropriation encountered at that event, quoting Dr. Erica Moiah James of the University of Miami.

73. Dr. James is quoted in the Carroll Article as stating that in the Infringing Collages "there was absolutely no effort to transform [the Roberts Collages]. The boldness of

[Defendant Edwards] and [Defendant Beavers] to share [the Infringing Collages] in that space was stunning."

74. The Infringing Collages, and their marketing to Plaintiff's primary base of customers, are therefore far outside the norms of the relevant artistic and commercial community, and struck a discerning member of that community as "disturbing" and "disturbingly obvious."

75. Dr. James was also quoted in the Carroll Article as saying that collage art, "at this level, is also an expensive commodity. The market demand for the work of Black artists in general is intense, and the market needs to be supplied. Ethics often takes a back seat."

76. Plaintiff herself is quoted in the Carroll Article as stating, when asked for comment, that "In no way shape or form would I ever prevent any artist, especially artists of color, from making a living, because this is a very tough profession. My track record with helping young artists develop their skills and their own voice is easily researchable. What I object to is someone creating work knowing that it is being mistaken as mine and using that for profit. This is not about competition; it's about having integrity."

***Defendants' Infringements Will Cause Harm To Plaintiff***

77. The confusingly similar appearance of the Defendants' Infringing Collages, examples of which are attached as Exhibit 9 (collages credited "Lynthia Edwards"), have caused and will cause an irreparable loss of reputation and goodwill to Ms. Roberts because customers will falsely ascribe the poor quality of the Infringing Collages to Ms. Roberts, or cease to distinguish between Ms. Roberts' genuine series of Roberts Collages and the confusingly similar series of collages marketed by Defendants.

14

78. Upon information and belief, Defendants copied the distinctive Trade Dress of Ms. Roberts' Collages in order to create a likelihood of confusion between the Infringing Collages and Ms. Roberts' superior collages.

79. Upon information and belief, prior to the significant financial and critical success of the Roberts Collages, Defendants had never previously marketed any collages or other works that were substantially or confusingly similar to the Roberts Collages.

80. Upon information and belief, prior to the significant financial and critical success of the Roberts Collages, no other person or entity had ever previously marketed any collages or other works that were substantially or confusingly similar to the Roberts Collages.

81. Since Defendants have been put on notice of Plaintiff's objections to the Infringing Collages, Defendants have continued to create and market collages that are substantially and confusingly similar to the Robert Collages, and have copied new elements that Ms. Roberts has introduced into the look of the Roberts Collages.

82. Defendants' use of Ms. Roberts' Trade Dress was undertaken, and has continued for over two years, without the consent of Ms. Roberts.

83. Defendants have copied and continue to copy Ms. Roberts' Trade Dress in association with a directly competing product, namely a series of fine-art collages, and they have specifically targeted the same channels of trade and customer base with their collages as does Ms. Roberts.

84. Ms. Roberts supplies the Roberts Collages to art collectors, who are the same customers to whom Defendants market their Infringing Collages.

85. Ms. Roberts supplies the Roberts Collages through art galleries and through retail channels such as domestic and international art fairs, specifically including the Chicago Art

Fair and Untitled Art Miami Beach, which are the same channels of trade at which the Infringing Collages are offered and have been offered for sale.

86. As noted above, Mr. Beavers has himself acknowledged that "so many of [his] clients" sought to acquire Ms. Roberts' collages for their collections.

87. Upon information and belief, art buyers place significant reliance on the Trade Dress of the Roberts Collages when making a purchasing decision.

88. Defendants' use of Ms. Roberts' Trade Dress in their Infringing Collages, or in advertising or promotion for the Infringing Collages, misrepresents the nature, characteristics, and quality of the Infringing Collages, because said misrepresentation creates a likelihood that the public would associate Infringing Collages with the Roberts Collages.

89. Defendants' use of Ms. Roberts' Trade Dress in their Infringing Collages, or in advertising or promotion for the Infringing Collages, will also harm the legitimate collectors of the Roberts Collages, by diluting the distinctiveness of the Trade Dress in the relevant marketplace.

90. Upon information and belief, Defendants' infringement of Ms. Roberts' Trade Dress is and has been done in bad faith, knowingly and willfully and with the intent to confuse the relevant purchasing public, to trade upon Ms. Roberts' goodwill, and to dilute the distinctiveness of the Trade Dress.

91. Upon information and belief, Defendants' Infringing Collages will tarnish Ms. Roberts' Trade Dress in the minds of relevant purchasers because they are of inferior material and aesthetic quality relative to the Roberts Collages.

92. Defendants' use of Ms. Roberts' Trade Dress constitutes passing off, namely, false representations and false advertising in violation of §43(a) of the Lanham Act.

## COUNT I
## COPYRIGHT INFRINGEMENT

93. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 92 as if set forth fully herein.

94. Defendants' unauthorized copying of Plaintiff's Registered Collages in the Infringing Collages, and subsequent reproduction, public display and public distribution of the Infringing Collages, are infringements of Plaintiff's copyright in the Registered Collages in violation of the Copyright Act, 17 U.S.C. § 106.

95. As a direct and proximate result of the foregoing acts of the Defendants, the Plaintiff has been damaged in an amount to be proved at trial but which is believed to exceed one million dollars.

96. Ms. Roberts hereby alleges that Defendants' aforesaid conduct has infringed and will continue to infringe Ms. Roberts' valuable rights in the Registered Collages unless enjoined by this Court.

97. Ms. Roberts has no adequate remedy at law.

## COUNT II
## TRADE DRESS INFRINGEMENT UNDER THE LANHAM ACT

98. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 97 as if set forth fully herein.

99. Ms. Roberts hereby alleges that Defendants' aforesaid conduct has infringed and will continue to infringe Ms. Roberts' valuable rights in the Trade Dress unless enjoined by this Court.

100. As a direct and proximate result of the foregoing acts of the Defendants, the Plaintiff has been damaged in an amount to be proved at trial but which is believed to exceed one million dollars.

101. Ms. Roberts has no adequate remedy at law.

## COUNT III
## UNFAIR COMPETITION UNDER NEW YORK LAW

102. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 101 as if set forth fully herein.

103. Pursuant to New York General business Law section 349 and New York common law, Ms. Roberts hereby alleges that Defendants' aforesaid conduct constitutes deceptive trade practices.

104. Defendants' fraudulent marketing of the Infringing Collages knowing and intending that such collages are confusingly similar to the Roberts Collages is likely to substantially damage the public as a result of the Defendants' deceptive trade practices.

105. As a direct and proximate result of the foregoing acts of the Defendants, the Plaintiff has been damaged in an amount to be proved at trial but which is believed to exceed one million dollars.

106. Unless enjoined by this Court, Defendants will continue their deceptive practices, thereby deceiving the public and causing Ms. Roberts immediate and irreparable damage for which she has no adequate remedy at law.

## COUNT IV
## DILUTION UNDER NEW YORK LAW

107. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 106 as if set forth fully herein.

108. The actions of Defendants as set forth above have been undertaken willfully and in bad faith.

109. Pursuant to New York General business Law section 368-d and New York common law, Ms. Roberts hereby alleges that Defendants' aforesaid conduct has caused and will cause a substantial likelihood of dilution of the distinctive and valuable quality of the Trade Dress and a likelihood of injury to Ms. Roberts' business reputation unless enjoined by this Court.

110. As a direct and proximate result of the foregoing acts of the Defendants, the Plaintiff has been damaged in an amount to be proved at trial but which is believed to exceed one million dollars.

111. Ms. Roberts has no adequate remedy at law.

## JURY DEMAND

112. Plaintiff demands trial by jury of all issues so triable.

**WHEREFORE**, the Plaintiff requests the following relief:

A. Actual damages and Defendants' profits in an amount to be proved at trial but believed to be in excess of one million dollars;

B. A permanent injunction requiring the Defendants to cease and desist from reproducing, distributing, and/or displaying the Infringing Collages;

C. A permanent injunction requiring the Defendants to cease and desist from reproducing, distributing, and/or displaying any pictorial, graphic or sculptural work or item of merchandise that infringes the rights of Plaintiff in the Trade Dress or the Registered Works;

D. An award of the costs of bringing this action, including reasonable attorneys fees, to the extent permitted by applicable law.

E. Such other and further relief as this Court deems just and proper.

Dated:  August 1, 2022

                                              Respectfully submitted,

**REITLER KAILAS & ROSENBLATT LLP**

By: *s/ Robert W. Clarida*
      Robert W. Clarida
      885 Third Avenue, 20th Floor
      New York, NY 10022
      Tel: (212) 209-3045
      rclarida@reitlerlaw.com

*Counsel for Plaintiff Deborah Roberts*