# EXHIBIT 4



**New York**
885 Third Avenue, 20th Floor
New York, NY 10022
Tel: 212.209.3050
Fax: 212.371.5500

**Princeton**
4 Independence Way, Ste. 120
Princeton, NJ 08540
Tel: 609.514.1500
Fax: 609-514-1501

www.reitlerlaw.com

November 4, 2021

**BY MAIL AND EMAIL**

Richard Beavers
Richard Beavers Gallery
408 Marcus Garvey Boulevard
Brooklyn, NY 11216
rb@richardbeaversgallery.com

Lynthia Edwards c/o
Richard Beavers Gallery
408 Marcus Garvey Boulevard
Brooklyn, NY 11216

Re: Infringing Artwork

Dear Ms. Edwards and Mr. Beavers:

This firm represents Deborah Roberts, a noted American artist based in Austin, Texas. I write further to the demand letters addressed to both of you, dated January 18, 2021 from attorney Rudolph H. Green, concerning infringements of Ms. Roberts' work by a number of Lynthia Edwards' works exhibited at and promoted by the Richard Beavers Gallery ("Infringing Works").  Those letters from Mr. Green cautioned that Ms. Roberts would pursue all available legal remedies if you, the Gallery and Ms. Edwards, did not each cease your ongoing infringements of Ms. Roberts' intellectual property rights. You have not done so.  Ms. Roberts has therefore instructed me to prepare this letter to advise you of the some of the legal grounds on which she intends to commence litigation in federal court to seek monetary damages and attorneys' fees if your infringements continue.

**Copyright Infringement**

The Copyright Act prohibits the unauthorized creation of derivative works, *see* 17 U.S.C. 106(2), which the Act defines as any works that are "*based upon* one or more preexisting works, such as … *any other form in which a work may be recast, transformed, or adapted*." (Emphasis added). The infringing Works are clearly derivative works under this definition

Any observer of the Infringing Works would perceive immediately that they are "adapted" from, and substantially similar to, original and protectable aspects of composition, subject matter, framing, selection and arrangement embodied in the Roberts Works, notwithstanding any superficial differences. *See e.g. Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127 (2d Cir. 2003), in which the defendant's Persian carpet design (labeled "Bashian" below) was held to infringe the plaintiff's Persian carpet design (labeled "Tufenkian" below), despite a number of obvious points of disparity, and despite the fact that the individual design elements were taken from public domain sources:

Beavers/Edwards
November 4, 2021
Page 2



The infringement by Ms. Edwards is directly analogous to *Steinberg v. Columbia Pictures,* 663 F. Supp. 706 (S.D.N.Y. 1987), in which the movie poster for the Robin Williams film "Moscow on the Hudson," shown on the left below, was held to infringe the plaintiff's drawing for a New Yorker magazine cover, shown on the right below:



Note that *none* of the specific individual details of the movie poster are the same as the corresponding elements of the plaintiff's drawing.

In *Sid & Marty Krofft Television Productions Inc. v. McDonald's Corp.,* 562 F.2d 1157 (9th Cir. 1977), the Ninth Circuit similarly held that various elements featured in McDonald's TV commercials in the 1970s, including the "Mayor McCheese" character shown on the left below, infringed the "total concept and feel" of the *H.R. Pufnstuf* children's television show created in 1969 by puppeteers Sid and Marty Krofft, including the title character shown on the right below,

Beavers/Edwards
November 4, 2021
Page 3



The court's analysis in *Sid & Marty Krofft* stressed the similarity in "total concept and feel" between the parties' works:

> Duplication or near identity is not necessary to establish infringement. Runge v. Lee, 441 F.2d 579, 582 (9 Cir. 1971); Williams v. Kaag Manufacturers, Inc., supra, 338 F.2d at 951. As this court stated in Universal Pictures Co., Inc. v. Harold Lloyd Corp., infra, 162 F.2d 354, at 360:
>
>> "(A)n infringement is not confined to literal and exact repetition or reproduction; it includes also the various modes in which the matter of any work may be adopted, imitated, transferred, or reproduced, with more or less colorable alterations to disguise the piracy."
>
> We have viewed representative samples of both the H. R. Pufnstuf show and McDonaldland commercials. It is clear to us that defendants' works are substantially similar to plaintiffs'. They have captured the "total concept and feel" of the Pufnstuf show. Roth Greeting Cards v. United Card Co., 429 F.2d 1106, 1110 (9th Cir. 1970).

*Id.* at 1167.

As the Ninth Circuit noted in *Sid and Marty Krofft*, the protection of "total concept and feel" has been the standard in infringement actions for over 50 years, particularly in cases involving works of visual art. It originated in the *Roth Greeting Cards* case in 1970, cited in *Sid and Marty Krofft,* where defendant's line of greeting cards, shown on the right below, was held to infringe the "total concept and feel" of plaintiff's cards, despite seemingly overwhelming differences at the level of individual detail:



The Second Circuit applied the same "total concept and feel" standard in *Knitwaves, Inc. v. Lollytogs Ltd.*, 104 F.3d 353 (2d Cir. 1996) to find infringement between the parties' respective sweater designs (plaintiff's design is shown on the left):



In *Knitwaves*, the selection of squirrels and leaves as subject matter was itself deemed a significant element of the infringement, notwithstanding that the particular squirrels and leaves were rendered differently and placed differently on the parties' respective garments:

> Knitwaves' "original contribution" consists not merely – as Lollytogs would have it – in arranging leaves and squirrels in a specific pattern, but in (1) selecting leaves and squirrels as its dominant design elements; (2) coordinating these design elements with a

Beavers/Edwards
November 4, 2021
Page 5

> "fall" palette of colors and with a "shadow-striped" … or a four-paneled background; and (3) arranging all the design elements and colors into an original pattern for each sweater … Not only do Lollytogs' renderings of [the two fall] symbols substantially resemble Knitwaves' renderings, but Lollytogs has employed them in virtually the same manner as Knitwaves has … on strikingly similar backgrounds … and in virtually the same color scheme. An observer viewing the sweaters side by side cannot help but perceive them as coming from the same creative source.

*Id.* at 1004.

The above analysis applies fully to the similarities between the Roberts Works and the Infringing Works. Following *Knitwaves,* the Southern District of New York in *LaChapelle v. Fenty,* 812 F. Supp. 2d 434 (S.D.N.Y. 2011), also applied the "total concept and feel" analysis to find actionable similarity between a series of S&M-themed images by fashion photographer David LaChapelle, one of which is shown on the left below, and scenes from a music video by pop singer Rhianna, one of which is shown on the right below:



Accordingly, the caselaw firmly establishes that the proper legal comparison for copyright infringement is between the "total concept and feel" of the parties' respective works in their entireties, with the focus on the similarities rather than the differences; the works cannot be dissected into individual elements, however different some of those elements may be. As Learned Hand famously held almost a century ago, "no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corporation*, 81 F.2d 49 (2d Cir. 1936). See also *Milliken & Co. v. Shaw Indus. Inc.,* 978 F. Supp. 1155 (N.D. Ga. 1997)(differences not sufficient to create different "aesthetic appeal" to an ordinary observer who was not seeking to detect the differences). Under this governing standard, the Infringing Works clearly violate Ms. Roberts' copyrights in the Roberts Works.

**Trademark Infringement**

In addition to the flagrant copyright infringement of the Infringing Works, these works also violate Ms. Roberts' trademark rights under the federal Lanham Act. The Lanham Act, at 15 U.S.C. 1125(a), provides as follows:

Beavers/Edwards
November 4, 2021
Page 6

> (a) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any ... false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities ... of his ... goods, services or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Willful violations of the Lanham Act subject you to all of the remedies provided thereby, including injunctive relief, disgorgement of profits, treble damages, and an award of attorney's fees incurred by our client in pursuing this matter.

Viewers seeing the Roberts Works know immediately that she is the source of these Works, because their overall appearance creates a distinctive visual impression that functions as a trademark for Ms. Roberts. *See, e.g.,* Katie Friel, "Dazzling San Antonio Art Museum Adds Landmark Texas Artist to Collection," *Culture Map San Antonio* (Feb. 26, 2021)(referring to Ms. Roberts' "trademark collage-and-paint style").[1]

Consequently, the Roberts Works are subject to protection under the Lanham Act, in addition to the protection they receive under the Copyright Act.  For example, in *Romm Art Creations v. Simcha International, Inc.*, 786 F. Supp. 1126 (E.D.N.Y. 1992). the Eastern District of New York issued an injunction under the Lanham Act against the "marketing and selling of certain limited editions and fine art posters" that had the same "distinctive style and appearance" as a series of fine art works created by plaintiff.  The "look" of the plaintiff's works served, in other words, as a trademark for plaintiff:

---

[1] https://sanantonio.culturemap.com/news/arts/02-26-21-dazzling-san-antonio-art-destination-adds-important-acquisition-to-collection/, visited October 21, 2021.

Beavers/Edwards
November 4, 2021
Page 7



The Defendant's posters, one of which is shown on the right below, created "the same overall impression" to a sufficient degree that the court ordered a preliminary injunction against the sale of those posters:

 

The court's analysis reads in material part as follows:

> Having examined the color patterns and shading of the Tarkay works, the placement of figures in each of the pictures examined, the physical attributes of his women, the depiction of women sitting and reclining, their characteristic clothing vis-a-vis those portrayed by Patricia, the Court concludes that there is "sufficient similarity between the products to scrutinize the evidence for proof of confusion"….
>
> The test for determining similarity is whether the [posters] create the "same overall impression" when viewed separately (*Paco Rabanne Parfums, S.A. v. Norco Enters.,*

Beavers/Edwards
November 4, 2021
Page 8

> *Inc.,* 680 F.2d 891, 893 [2d Cir.1982], *quoting RJR Foods, Inc. v. White Rock Corp.,* 603 F.2d 1058, 1060 [2d Cir.1979] ).
>
> In light of the fact that the Tarkay and Patricia patterns are not dictated by function, and that a variety of patterns is possible, the similarity of the patterns is striking. When this striking similarity is factored into the likelihood of confusion analysis, in light of the strength of the Tarkay trade dress, consumer confusion is a likely result (*see Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 873 [2 Cir.1986] ). The Court holds, therefore, that the trade dresses of Tarkay and Patricia create the "same overall impression" when viewed separately (*Paco Rabanne Parfums, S.A. v. Norco Enters., Inc., supra* ).

*Id.* at 1137-1138.

Accordingly, the court found a likelihood that plaintiff would succeed on the merits of its Lanham Act claim against defendant's unauthorized simulations. The same analysis applies here. *See also, Hartford House Ltd. v. Hallmark Cards, Inc.*, 647 F. Supp. 1533 (D. Colo. 1986)(protecting " a creative artist's rights in his or her creation" against confusingly similar products); *Ruolo v. Russ Berrie & Co., Inc.*, 886 F.2d 931 (7th Cir. 1989)(overall appearance of a line of greeting cards held to be protectable trade dress); *Hughes v. Design Look Inc.,* 693 F.Supp. 1500 (S.D.N.Y.1988) (section 1125(a) applicable in case of fine art poster calendar).

**Conclusion**

The Infringing Works violate the valuable intellectual property rights of Ms. Roberts, appropriate original elements of the composition, subject matter, framing, selection, arrangement and "total concept and feel" embodied in the Roberts Works, are likely to cause confusion among the relevant public as to the source, sponsorship or affiliation of the Infringing Works, and therefore constitute violations of both the Copyright Act of 1976, 17 U.S.C. 101 *et seq.*, and the federal Lanham Act, 15 U.S.C. 1125(a)(1).

You must therefore cease and desist immediately from any further creation, display or sale of works incorporating elements of Ms. Roberts' copyrighted authorship or trade dress and confirm in writing to the undersigned within seven (7) days of this letter that you have done so.

We also hereby demand that you provide us with the following information within <u>seven (7) days</u> of your receipt of this letter:

1. The name and contact information for all buyers to whom you have distributed the Infringing Works.

2. An accounting of the gross revenue received directly or indirectly by each of you in connection with the sale or other exploitation of the Infringing Works.

When we have received this information we will confer with our client to determine whether a resolution of this matter is possible short of litigation, and what the acceptable terms of such a

Beavers/Edwards
November 4, 2021
Page 9

resolution would be. We also hereby demand that you preserve all documents and other communications in your possession, custody or control concerning the Roberts Works and the Infringing Works, including without limitation all versions, sketches, notes, source materials, sales records, social media posts, emails, text messages and audio recordings.

This letter is not intended as a complete statement of the facts or the applicable law, and is without prejudice to any of Ms. Roberts' rights or remedies, all of which are expressly reserved.

If you fail to comply with these demands immediately we will have no choice but to recommend that our client take all necessary steps to protect her valuable rights under the law.

> Very truly yours,
>
> */Robert W. Clarida/*
>
> Robert W. Clarida
> Reitler Kailas & Rosenblatt LLP