UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DEBORAH ROBERTS,

　　　　　PLAINTIFF,

V.

RICHARD BEAVERS GALLERY, RICHARD BEAVERS, AND
LYNTHIA EDWARDS

　　　　　DEFENDANTS.

CASE NO. 1:22-cv-4516

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Dated:  February 1, 2023

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Maaren A. Shah
Luke Nikas
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100
maarenshah@quinnemanuel.com
lukenikas@quinnemanuel.com

*Attorneys for Defendants Richard Beavers Gallery,
Richard Beavers, and Lynthia Edwards*

## TABLE OF CONTENTS

*Page*

**TABLE OF AUTHORITIES** ............................................................................... II

**PRELIMINARY STATEMENT** ........................................................................ 1

**BACKGROUND** .................................................................................................. 3

    I.   FACTUAL BACKGROUND ............................................................................. 3

    II.  PROCEDURAL HISTORY .............................................................................. 4

**ARGUMENT** ....................................................................................................... 4

    I.   THE COMPLAINT FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT ...................... 5

        A.   The Artistic Themes And Traditions Underlying Both Artists' Works Are Not Copyrightable As A Matter Of Law ............................................................... 5

        B.   The Works Are Substantially Dissimilar, And Roberts Fails To Claim Edwards Actually Copied Protectable Elements Of Her Works ................................. 11

            *1.Roberts Did Not Create And Does Not Own Third Party Source Material* ........... *12*

            *2.The Protectable Elements Of The Works Are Substantially Dissimilar* ............... *15*

        C.   Edwards's Works Are Protected By Fair Use ........................................ 19

    II.  THE COMPLAINT FAILS TO STATE A CLAIM FOR TRADE DRESS INFRINGEMENT ............... 20

**CONCLUSION** ................................................................................................ 25

<u>T<small>ABLE OF</small> A<small>UTHORITIES</small></u>

**Page(s)**

***Cases***

*Abdin v. CBS Broad. Inc.*,
  971 F.3d 57 (2d Cir. 2020)................................................................................... 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................. 4

*Attia v. Soc'y of N.Y. Hosp.*,
  201 F.3d 50 (2d Cir. 1999) ................................................................................. 11

*Belair v. MGA Ent., Inc.*,
  831 F. Supp. 2d 687 (S.D.N.Y. 2011), *aff'd*, 503 F. App'x 65 (2d Cir. 2012) ........................ 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................. 5

*Bill Diodato Photography LLC v. Kate Spade, LLC*,
  388 F. Supp. 2d 382 (S.D.N.Y. 2005)............................................................. 6, 12

*Blanch v. Koons*,
  467 F.3d 244 (2d Cir. 2006) ........................................................................... 15, 19

*Bubble Genius LLC v. Smith*,
  239 F. Supp. 3d 586 (E.D.N.Y. 2017) ............................................................ 21, 24

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994)........................................................................................... 19

*Canal+ Image UK Ltd. v. Lutvak*,
  773 F. Supp. 2d 419 (S.D.N.Y. 2011)........................................................... 16, 17

*Cariou v. Prince*,
  714 F.3d 694 (2d Cir. 2013)....................................................................... 15, 19, 20

*Castorina v. Spike Cable Networks, Inc.*,
  784 F. Supp. 2d 107 (E.D.N.Y. 2011) ................................................................. 12

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)................................................................................. 5

*Christian Louboutin S.A. v. Yves St. Laurent Am. Holding, Inc.*,
  696 F.3d 206, 219 (2d Cir. 2012)............................................................. 22, 23, 24

*Eliya, Inc. v. Steven Madden, Ltd.*,
   749 F. App'x 43 (2d Cir. 2018) ................................................................. 21

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S., 340 (1991) .............................................................................. 12

*Fortgang v. Pereiras Architects Ubiquitous LLC*,
   230 F. Supp. 3d 77 (E.D.N.Y. 2017) ........................................................ 16

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Rocth, Inc.*,
   58 F.3d 27 (2d Cir. 1995).................................................................. 22, 23

*Judith Ripka Designs, Ltd. v. Preville*,
   935 F. Supp. 237 (S.D.N.Y. 1996)............................................................. 6

*Kaplan v. Stock Mkt. Photo Agency, Inc.*,
   133 F. Supp. 2d 317 (S.D.N.Y. 2001).................................................. 5, 10

*Key Publications, Inc. v. Chinatown Today Pub. Enterprises, Inc.*,
   945 F.2d 509 (2d Cir. 1991) .................................................................. 12

*Kim v. Kimm*,
   884 F.3d 98 (2d Cir. 2018) ...................................................................... 4

*Kisch v. Ammirati & Puris Inc.*,
   657 F. Supp. 380 (S.D.N.Y. 1987)............................................................. 5

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
   71 F.3d 996 (2d Cir. 1995) ..................................................................... 16

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
   113 F.3d 373 (2d Cir. 1997)................................................................... 21

*Leibovitz v. Paramount Pictures Corp.*,
   137 F.3d 109 (2d Cir. 1998).................................................................. 10

*Luv n' Care, Ltd. v. Regent Baby Prod. Corp.*,
   986 F. Supp. 2d 400 (S.D.N.Y. 2013)..................................................... 24

*Mana Prods., Inc. v. Columbia Cosms. Mfg., Inc.*,
   65 F.3d 1063 (2d Cir. 1995) .................................................................. 21

*Marano v. Metro. Museum of Art*,
   844 F. App'x 436 (2d Cir.) ..................................................................... 20

*McDonald v. West*,
   138 F. Supp. 3d 448 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016) ............ 5, 10

*Montgomery v. NBC Television*,
   833 F. App'x 361 (2d Cir. 2020) ............................................................ 16

*Muller v. Twentieth Century Fox Film Corp.*,
  794 F. Supp. 2d 429 (S.D.N.Y. 2011), *aff'd sub nom, Muller v. Anderson*, 501 F. App'x 81 (2d
  Cir. 2012) ..................................................................................................................... 15

*Murray Hill Publications. v. Twentieth Century Fox Film Corp.*,
  361 F.3d 312 (6th Cir. 2004) ........................................................................................ 14

*Ninying v. Fire Dep't*,
  416 F. Supp. 3d 175 (E.D.N.Y. 2017) ............................................................................ 5

*Oriental Art Printing, Inc. v. Goldstar Printing Corp.*,
  175 F. Supp. 2d 542 (S.D.N.Y. 2001), *aff'd sub nom. Oriental Art Printing Inc. v. GS Printing
  Corp.*, 34 F. App'x 401 (2d Cir. 2002) ........................................................................ 13

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010) .................................................................................... passim

*Qualitex Co. v. Jacobson Prod. Co.*,
  514 U.S. 159 (1995) ...................................................................................................... 23

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018) ................................................................................. 10, 18

*Rogers v. Koons*,
  960 F.2d 301 (2d Cir. 1992) .................................................................................... 10, 11

*Rosenshine v. A. Meshi Cosms. Indus. Ltd.*,
  2020 WL 1914648 (E.D.N.Y. Mar. 30, 2020) ......................................................... 20, 21

*Schleifer v. Berns*,
  2017 WL 3084406 (E.D.N.Y. July 19, 2017) ................................................................ 16

*Sure Fit Home Prod., LLC v. Maytex Mills, Inc.*,
  2021 WL 2134863 (S.D.N.Y. May 26, 2021), *aff'd*, 2022 WL 1073209 (Fed. Cir. Apr. 11,
  2022) ............................................................................................................................. 24

*TCA Television Corp. v. McCollum*,
  839 F.3d 168 (2d Cir. 2016) .......................................................................................... 20

*Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*,
  916 F.2d 76 (2d Cir. 1990) ............................................................................................ 22

*Ward v. Andrews McMeel Pub., LLC*,
  963 F. Supp. 2d 222 (S.D.N.Y. 2013) ........................................................................... 20

*Zalewski v. Cicero Builder Dev., Inc.*,
  754 F.3d 95 (2d Cir. 2014) ............................................................................................ 10

***Statutes***

15 U.S.C. § 1051 et seq.................................................................................. 20

17 U.S.C. § 102 .............................................................................................. 5

17 U.S.C. § 106 .............................................................................................. 5

17 U.S.C. § 107 .............................................................................................. 19

***Other Authorities***

Deborah Roberts, Artist Statement, http://www.deborahrobertsart.com/artist-statement ........ 3, 20

Defendants Lynthia Edwards, Richard Beavers, and Richard Beavers Gallery ("RB Gallery"), by and through their attorneys, respectfully submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint (Dkt. 18, "SAC").

## PRELIMINARY STATEMENT

This case is about an artist at the height of her career punching down on an emerging artist in order to stifle market competition and eliminate a competitive threat. Plaintiff Deborah Roberts, an established artist backed by established galleries, has sued Lynthia Edwards and the gallery that represents her, claiming that Edwards unlawfully copied Roberts's artworks. But the fact that both artists use the collage style or feature children in their artworks does not support a copyright infringement claim. The use of photo-based collage has deep roots in the work of Black American artists, and there is a long line of artists *before* Roberts who have worked in this same general style. The only similarity between Roberts's and Edwards's art is that both artists fit into a long-established historical tradition that Roberts neither invented nor owns. Roberts may be well-deserving of all the accolades she has accomplished, but she did not invent and does not own the concept of depicting Black figures through collage. Roberts has no right—whether through copyright, trademark or otherwise—to try to pull the ladder up behind her after climbing a path that many artists have traveled before her.

Roberts's real complaint isn't one of infringement; it is the promotion by a credible gallery of an artist she views as a potential competitive threat. Roberts, backed by her galleries, began her campaign to stifle Edwards's career behind the scenes long before this lawsuit made the dispute public. Rather than address any complaints of supposed copying to Edwards herself, Roberts instead tried to pressure Beavers to stop representing Edwards. As Roberts told Beavers in a voicemail: "I see that you're representing that girl in [ ] Alabama who's ripping off my work. And I did get an attorney on her, . . . she has no money. That's the only reason I haven't sued her. But I'm telling you right now, if she continues to show my work and do my work, I'm gonna make

it public.  Public.  The New York Times.  I don't care what I have to do I'm gonna squash this."
When her threats to Beavers did not work, Roberts used her influence in the art world to encourage
patrons and collectors to boycott RB Gallery in hopes of pressuring the gallery to drop Edwards.
Roberts's own galleries, which have an obvious financial stake in her marketability, even
succeeded in convincing a prestigious digital exhibitor to pull Edwards's artworks off its site by
providing false information about Edwards and RB Gallery to the exhibitor, and had RB Gallery
blocked from prestigious art fairs.  When this was not enough to slow Edwards's trajectory,
Roberts filed this suit.  Notably, the complaint does not and cannot allege that Edwards actually
copied Roberts's work or used her work as source material.  Rather, Roberts is essentially
complaining that Edwards creates artwork in a similar style and medium, which neither artist
invented or owns, and which is not copyrightable as a matter of policy or law.  Roberts's complaint
suffers from numerous legal deficiencies that require dismissal of this lawsuit.

   *First*, the complaint fails to state a claim for copyright infringement because Second Circuit
precedent is clear that stylistic and thematic elements are not protectable as a matter of law.
Roberts's claim also fails because, excluding the elements of her works that are not original, she
cannot demonstrate substantial similarity between the works.  And in any event, Edwards's works
are protected by the doctrine of fair use as a transformation in pursuit of new expression, meaning,
or message.

   *Second*, the complaint fails to state a claim for trade dress infringement because Roberts
has not offered a precise expression of the character and scope of the claimed trade dress, as she
must; and because the artistic features of her works that Roberts identifies (including the subject
matter of Black children or adolescents, the style of photo-collage, and the use of expressive hand
gestures or colorful, patterned fabric swatches) are all necessary, functional elements of the
artwork itself that are deeply rooted in this artistic tradition.

   The Court should dismiss Roberts's complaint, with prejudice.

2

<u>**BACKGROUND**</u>

**I.**   **FACTUAL BACKGROUND**

Deborah Roberts is a well-known American visual artist from Austin, Texas, who works primarily in collage using fragments of photographs and fabric swatches that feature Black children and adolescents as subjects, either individually or in small groupings.  (SAC ¶¶ 1, 3.)  Her work often addresses the concepts of otherness, race, and ideal standards of beauty, and increasingly addresses the themes of criminality and Black boys.[1]  Roberts's work can be found in the collections of many prestigious museums.  (*Id.* ¶ 2.)

Lynthia Edwards is an up-and-coming multidisciplinary artist based in Birmingham, Alabama, whose art captures the complex emotional experiences of Black girls in the American South and often explores her personal upbringing as part of the Pentecostal Church in small-town Alabama.  As an artist, Edwards transforms her experiences into deeply personal works ranging in media from collages to paintings to quilts, with the collage works using found photographs and other found materials against often-colorful backgrounds. (*Id.* ¶¶ 6, 9, 43.)

RB Gallery, owned and operated by Richard Beavers, has been in Brooklyn's Bedford-Stuyvesant neighborhood since 2007 and is dedicated to exhibiting emerging and mid-career Black artists and fostering a community dialogue around their work.  (*Id.* ¶¶ 17-19.)  Over the past 15 years, Beavers has cultivated a gallery known not only for its quality and exceptional ability to spot early talent like Edwards, but also for its inclusive approach to art in a business that prides itself on exclusivity.  Now-celebrated artists who got their start through RB Gallery's program or worked with Beavers early in their careers include Genesis Tremaine, Nathaniel Mary Quinn, Bisa Butler, Marcus Jansen, Phyllis Stephens, Jamel Shabazz, and Leroy Campbell.  In addition to holding three to four solo exhibitions each year, Beavers has, for many years now, poured his time,

---

[1] Available at http://www.deborahrobertsart.com/artist-statement.

resources, and energy into creating a gallery space that fights the underrepresentation of Black artists in the broader art world and of art spaces in Black communities.  Because of his artistic discernment and commitment to Black storytelling, Beavers has cultivated a growing, passionate clientele eager to acquire the works he exhibits.  (*Id.* ¶ 22.)

## II. PROCEDURAL HISTORY

On August 1, 2022—after more than a year of back-room efforts to shut out RB Gallery and Edwards from the industry—Deborah Roberts sued Lynthia Edwards, Richard Beavers, and RB Gallery for copyright infringement, trade dress infringement, and deceptive business practices and dilution under N.Y. Gen. Bus. L. §§ 349 and 360-l.  (Dkt. 1).  Roberts amended her complaint on September 26, 2022 (Dkt. 14), in response to Defendants' pre-motion letter requesting leave to file for dismissal of all four claims.  Following a second round of pre-motion letters and a conference where the Court expressed skepticism over the validity of Roberts's claims, Roberts dropped her New York law claims and amended her copyright infringement and trade dress infringement claims for a second time.  (Dkt. 18.)  In her second amended complaint, Roberts alleges that her collages feature "found and manipulated fragments of photographs and fabric swatches with hand drawn and painted details, and feature Black children and adolescents as subjects, either individually or in small groupings, set against solid, unpatterned backgrounds" that are "uniquely associated" with Roberts, and that Edwards's works infringe on this aesthetic and style.  (SAC ¶¶ 3, 42-43, 48-49, 57.)  She also, for the first time and at the Court's suggestion, includes a side-by-side comparison of the precise Edwards works that she complains have infringed her own.  (SAC ¶ 45, Exs. 4-18, 24.)

### ARGUMENT

"To survive a motion to dismiss, a complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is facially

4

plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ninying v. Fire Dep't*, 416 F. Supp. 3d 175, 177 (E.D.N.Y. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "When evaluating substantial similarity [for a copyright infringement claim] on a motion to dismiss, no discovery or fact-finding is typically necessary, because what is required is only a visual . . . comparison of the works." *McDonald v. West*, 138 F. Supp. 3d 448, 454 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016) (quotation omitted); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) ("*Gaito*") (same). Further, on this motion, the Court may consider any document attached to the complaint as an exhibit or incorporated by reference. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

## I. THE COMPLAINT FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT

### A. The Artistic Themes And Traditions Underlying Both Artists' Works Are Not Copyrightable As A Matter Of Law

The complaint fails to adequately plead a claim for copyright infringement under 17 U.S.C. § 106 because, at most, it alleges that Roberts's and Edwards's works share a common subject matter and stylistic tradition: Black children, rendered in a mixed-media collage. (SAC ¶¶ 3, 48-49, 93-97.) But the law is clear that underlying subject matter is not subject to copyright. *See, e.g., Kaplan v. Stock Mkt. Photo Agency, Inc.*, 133 F. Supp. 2d 317, 323-4 (S.D.N.Y. 2001) (no substantial similarity where "almost all of the similarities in expression between [the works] are unprotectable elements or themes that flow predictably from the underlying subject matter."); *Kisch v. Ammirati & Puris Inc.*, 657 F. Supp. 380, 382 (S.D.N.Y. 1987) ("the fact that the same subject matter may be present in two paintings does not prove copying or infringement.") (quotation omitted). Equally clear is the maxim that "copyright does not protect styles," "[t]hemes," concepts, ideas, or artistic traditions. *McDonald*, 138 F. Supp. 3d at 455 (dismissing copyright claims on motion to dismiss); *see also Judith Ripka Designs, Ltd. v. Preville*, 935 F.

5

Supp. 237, 248 (S.D.N.Y. 1996) ("copyright laws do not protect styles, but only particular original designs"); *Bill Diodato Photography LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382, 390 (S.D.N.Y. 2005) (citing 17 U.S.C. § 102(b)) ("In no case does copyright protection for an original work of authorship extend to any idea" or "concept. . . regardless of the form in which it is described, explained, illustrated, or embodied in such a work."). Were it otherwise, then Roberts would own the exclusive monopoly on depicting Black children in art, or employing mixed-media collage— and no one else could ever again use this subject or style. That is not the law. Much like Pablo Picasso did not own the exclusive right to depict people in the cubist style (figs. 1-2), and Franz Klein did not own the exclusive right to paint abstract black marks inspired by ancient calligraphy (fig. 3), Deborah Roberts does not own and did not invent the subject of Black children nor the style of mixed-media collage.

**Figure 1**[2]



**Figure 2**[3]



**Figure 3**[4]



---

[2] Picasso and Braque both developed the style of analytic cubism in the early 20th Century. Left: Pablo Picasso, *Ma Jolie* (1911–12), oil on canvas, 39 3/8 x 25 3/4 inches; Right: Georges Braque, *The Portuguese* (1911–12), oil on canvas, 46 x 32 inches.

[3] Working almost a century later, Condo returned to the aesthetic language of cubism and female figures to inspire his own work. Left: George Condo, *The Insane Clown* (2019), etching with drypoint on paper, 20 x 22 inches; Right: Pablo Picasso, *Seated Woman* (1938), oil on canvas, 25 5/8 x 19 ¾ inches.

[4] All three artists in Figure 12 were greatly influenced by the traditional practice of Chinese calligraphy. Left: Robert Motherwell, *Elegy Study No. XIII* (1976–1979), acrylic on canvas mounted on board, 61 x 121.9 cm; Center: Walasse

Nor is Roberts the first artist to employ this specific subject or technique in her art. Rather—like Edwards—Roberts's own art is firmly rooted in the subjects and traditions of artists that came before her.  Like many Black American artists, both Roberts and Edwards draw from a shared tradition of improvisation, collage, and assemblage.  (SAC ¶ 9.)  The aesthetic lineage of which they are both a part includes the generation of Black American artists coming of age in the mid-twentieth century who appropriated cubist techniques developed by European modernists, such as Pablo Picasso (fig. 4) and Hannah Hoch (fig. 5), in part because of the cubists' own appropriation of traditional African art.  The cubist-inspired works of  Jacob Lawrence (fig. 6), Romare Bearden (fig. 7), and their contemporaries were equally fueled by local practices such as the piecing of quilts and the papering of walls of Southern homes with newspapers and magazine pages.  The following generation of artists, such as Benny Andrews (fig. 8) and Faith Ringgold (fig. 9), expanded the direction of Black cubist collage to include patterning, surface embellishments, and fabric drawn directly from African textiles.  Today, contemporary artists such as Lorna Simpson (fig. 10), Neo Matloga (fig. 11), and Njideka Akunyili Crosby (fig. 12) are all known for using paper and collage in their work.   So wide and deep is this tradition that Edwards is not even the first artist employing the tradition of mixed-media collage and the subject of Black children who has worked with Beavers.  Nathaniel Mary Quinn—a celebrated contemporary of Roberts and Edwards who now shows with the prestigious Gagosian Gallery—similarly employs this style and subject matter in his art (fig. 13).   The allegation that "prior to the . . . success of the Roberts Collages, no other person or entity had ever previously marketed any collages or other works that were . . . similar to the Roberts Collages" plainly cannot be credited.  (SAC ¶ 80.)

---

Ting, *Shooting Star* (1959), oil on canvas, 76.2 by 101.6 cm;  Right: Franz Kline, *Study for 'Cross Town'* (circa 1956), ink on paper, 21.6 by 27.9 cm.

**Figure 4[5]**



**Figure 5[6]**



**Figure 6[7]**



**Figure 7[8]**



**Figure 8[9]**



**Figure 9[10]**



---

[5] Pablo Picasso, detail from *Women at Their Toilette* (1938), collage and mixed media.
[6] Hannah Hoch, detail from *Modenschau* (*Fashion Show*) (1925-35), collage and mixed media.
[7] Jacob Lawrence, *The Card Game* (1953), tempera on board, 19 x 23.5 inches.
[8] Romare Bearden, *Pittsburg Memory* (1964), mixed media collage on fiberboard, 21.6 × 29.8 cm.
[9] Benny Andrews, *Eudora* (1978), oil and collage.
[10] Faith Ringgold, *Groovin' High* (1998), silkscreen 96/425, 31 ½ x 44 in.

**Figure 10[11]**



**Figure 11[12]**



**Figure 12[13]**



**Figure 13[14]**



The complaint identifies as the specific copyright-protected elements of Roberts's artworks features such as, "subject matter featuring Black children or adolescents, either individually or in small groupings"; "black and white or high-contract photographic fragments of facial features, hair, arms, legs, hands and feet, assembled in angular, unnatural arrangements"; as well as "expressive hand gestures," "colorful, patterned fabric swatches," "hand-drawn or hand-painted

---

[11] Lorna Simpson, *Earth & Sky, #17* (2016).
[12] Neo Matloga, *Khwaere* (2022), collage, charcoal, liquid charcoal, ink and soft pastel on canvas, 240 x 200cm.
[13] Njideka Akunyili Crosby, *I Refuse to be Invisible* (2010), ink, charcoal, acrylic and transfers on paper, 304.8 × 213.4 cm.
[14] Nathaniel Mary Quinn, *The Comedian* (2017), giclee, printed on Hahnemuhle German Etching 310gsm, 45.7 × 61 cm.

details," and "plain, unpatterned backgrounds." (SAC ¶¶ 3, 48.) But, as explained above, not only are these elements not unique to Roberts's work, they are not protectable by copyright law. *See Rogers v. Koons*, 960 F.2d 301, 308 (2d Cir. 1992) ("What is protected is the original or unique way that an author expresses those ideas, concepts, principles or processes."); *Gaito*, 602 F.3d at 67 (dismissing on pleadings for no substantial similarity where "it is patent that the overall visual impressions of the two designs are entirely different" even though "both designs set forth similar ideas and concepts relating to" the subject).

*First,* there can be no question that Roberts cannot own a copyright to the subject of Black children depicted individually or in groups. *See Kaplan,* 133 F. Supp. 2d at 323 ("Copyright derives from 'the photographer's original conception of his subject, not the subject itself.'"); *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 115–116 (2d Cir. 1998) ("Leibovitz is entitled to no protection for the appearance in her photograph of the body of a nude, pregnant female. Only the photographer's particular expression of such a body is entitled to protection."); *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1121 (9th Cir. 2018) (dismissing claim on pleadings because plaintiff "cannot prohibit other photographers from taking their own photos of [Michael] Jordan in a leaping, *grand jeté*-inspired pose."). *Second*, nor does Roberts hold a copyright to using "black and white or high-contrast photographic fragments of facial features, hair, arms, legs, hands and feet, assembled in angular, unnatural arrangements"—in other words, black-and-white photo-collage. *See McDonald*, 138 F. Supp. 3d at 455 ("copyright does not protect styles, but only particular original expressions of those styles.")*; Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 105 (2d Cir. 2014) ("Elements" that are taken from "recognized styles from which architects draw" do not get copyright protection.). *Third*, the same conclusion applies to the use of "expressive hand gestures," "colorful, patterned fabric swatches," "hand-drawn or hand-painted details," and "plain, unpatterned backgrounds"—each of which is a widely used artistic element that does not enjoy individual copyright protection. *See McDonald*, 138 F. Supp. 3d at 454 ("the

'raw materials' of art, like colors, letters, descriptive facts, and standard geometric forms" cannot be copyrighted).  Certainly, even the overall concept of depicting the Black experience through the tradition of mixed-media collage is not protectable or unique to Roberts.  *See Attia v. Soc'y of N.Y. Hosp.*, 201 F.3d 50, 54 (2d Cir. 1999) ("It is a fundamental principle of our copyright doctrine that ideas, concepts, and processes are not protected from copying."); *Rogers*, 960 F.2d at 308 ("focus must be on the similarity of the *expression* of an idea or fact, not on the similarity of the facts, ideas or concepts themselves.") (emphasis original).  Ironically, were Roberts's theory of copyright correct, then she herself would be liable for infringing the works of many of her predecessors working in the same tradition.

Because Roberts cannot assert copyright protection over the general concept or tradition of depicting Black children in mixed-media collage, her infringement claim must be dismissed.

## B.     The Works Are Substantially Dissimilar, And Roberts Fails To Claim Edwards Actually Copied Protectable Elements Of Her Works

Following the Court's guidance that Roberts's claim appeared to rest on unsound footing—that both artists generally work in the same style—and that Roberts needed to identify which specific Edwards works allegedly infringe which Roberts works, Roberts amended her complaint a second time.  (*See, e.g.,* SAC ¶ 42, Exs. 4-18.)  The complaint tries to further identify the purportedly similar elements of the two bodies of works as "the same photographic source material" and as "subject matter featuring Black children or adolescents," "black and white or high-contrast photographic fragments of facial features, hair, arms, legs, hands and feet, assembled in angular, unnatural arrangements," "expressive hand gestures," "colorful, patterned fabric swatches," and "hand-drawn or hand-painted details."  (*Id.* ¶¶ 3, 43, 48-49.)  Yet these allegations and comparison of the side-by-side images—which are apparent from the face of the exhibits to the complaint and the Court can and should consider at the pleading stage, *see McDonald*, 138 F. Supp. 3d at 454—only confirm that Roberts's claims improperly rest on general stylistic

similarities that are not protectable as a matter of law, and that the artworks are otherwise entirely dissimilar in their protectable expressive elements.

### 1.    *Roberts Did Not Create And Does Not Own Third Party Source Material*

To support the claims of copying and infringement, the complaint alleges that "[i]n one or more instances, the Defendants' copying by the Infringing Collages has gone so far as to incorporate the same photographic source material that Ms. Roberts selected for inclusion and use in the Registered Collages."  (SAC ¶ 43.)  Even if true, this allegation carries no legal significance because Roberts does not hold any rights to that source material.  The governing legal test requires Roberts to prove that Edwards copied Roberts's *original* work, *excluding* the elements of her work that are "not wholly original" (*i.e.*, the source photographs), and then prove that Edwards created artwork using those *original* protectable elements in a substantially similar way.  *Key Publications, Inc. v. Chinatown Today Pub. Enterprises, Inc.*, 945 F.2d 509, 514 (2d Cir. 1991); *see also Belair v. MGA Ent., Inc.*, 831 F. Supp. 2d 687, 693 (S.D.N.Y. 2011), *aff'd*, 503 F. App'x 65 (2d Cir. 2012) (when works "have both protectable and unprotectible elements," "the usual ordinary observer test becomes more discerning"); *Kate Spade, LLC*, 388 F. Supp. 2d at 392–93 (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S., 340, 345 (1991)) (noting that "'[t]he *sine qua non* of copyright is originality'" and "[f]or purposes of copyright law, 'original' means that 'the work was independently created by the author (as opposed to copied from other works) . . .'").  In other words, Roberts cannot sue Edwards for infringement for using source material created by a *different* artist that Roberts herself also used.  *See Castorina v. Spike Cable Networks, Inc.*, 784 F. Supp. 2d 107, 109 (E.D.N.Y. 2011) ( "[t]o establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.") (quotation omitted)*; Gaito*, 602 F.3d at 67 (the court is "required to determine whether any alleged similarities are due to protected aesthetic expressions original to the allegedly

infringed work, or whether the similarity is to something in the original that is free for the taking.").

For example, while Roberts points to the "expressive hand gestures" contained in her artwork as a protectable similarity between her and Edwards's work in Exhibit 4, the distinctive hand pose in Roberts's work is not her own creation.  Instead, it is a copy of the famous mugshot of Rosa Parks's hands and arrest number—hardly an image that Roberts can claim rights to, and one that Edwards's work does not even use.  (SAC, Ex. 4.)  Likewise, the "same black and white image of [a] young female face" that Roberts points to in Exhibits 6-9, 10, 12, and 14-18 is sourced from a photograph taken by Jill Freedman in 1968, showing two children with National Welfare Rights Organization flags in Washington, DC, during the Poor People's Campaign Solidarity Day. (Fig. 14; SAC, Exs. 6-9, 10, 12, 14-18.)  And the "clenched fist used frequently in Roberts's works" referenced in Exhibit 14 is the recognizable fist of Muhammed Ali in a photograph taken by Gordon Parks.  (Fig. 15; SAC Ex. 14; *see also* SAC Exs. 5-9.)  Roberts cannot establish infringement of an image that she does not own the copyrights to, and that she herself appropriated from another artist.  *See Oriental Art Printing, Inc. v. Goldstar Printing Corp.*, 175 F. Supp. 2d 542, 546 (S.D.N.Y. 2001), *aff'd sub nom. Oriental Art Printing Inc. v. GS Printing Corp.*, 34 F. App'x 401 (2d Cir. 2002) ("copyright protection extends only to those components of the work that are original to the creator.").

**Figure 14**[15]                    **Figure 15**[16]

    

---

[15] Jill Freedman, *Untitled: Two kids with National Welfare Rights Organization flags in Resurrection City, People's Campaign, Washington, D.C., 1968* (1968), vintage gelatin silver print.
[16] Gordon Parks, *Muhammad Ali* (1966), gelatin silver print.

And in any event, in each of those exhibits, the treatment of the source material by Roberts and Edwards is markedly different.  For example, in Exhibit 7, the Roberts work depicts the bust of a single figure using the female face with a single eye rendered in collage from different source material; whereas the Edwards work shows three full bodied children in various poses using the female face with both eyes rendered in collage from other source materials.  (SAC, Ex. 7.) Similarly, Exhibits 8 and 9 depict the same Roberts work against two different works by Edwards that use the image of the female face with added hair curlers and with both eyes replaced by other collage materials or no collaging on the face, respectively.  (*Id*., Exs. 8, 9; *see also* Ex. 12.)

Roberts's allegations about the clothing comparisons fare no better.  The t-shirt allegedly "taken from Deborah Roberts's Future Tense #27, 2018" (*Id*., Ex. 10; *see also* Ex. 14) is in fact the t-shirt worn by the boy in the Jill Freedman photograph.  (Fig. 14.)  It is not original to Roberts. And the "traditional buttoned shirt" from Exhibit 12, the "white shirt" from Exhibit 15, and the "crumpled fabric" from Exhibit 17 are likewise not elements created by Roberts, but instead sourced from the girl's shirt in the same Jill Freedman photograph.  (*Id*.)   What's more, many of the elements Roberts claims are copied actually come from Edwards's own photographs—that is, source material *original to and often depicting Edwards herself.*  Examples include the "expressive hands" in Exhibits 11 (*Friends*), 12 (unpublished), and 18 (*Hey Y'all*) that show Edwards's own hands and arms, as well as Exhibit 16 (*Lipstick & Ice Cream*), where Edwards used photographs of her own hands holding lipstick and popsicles, her own striped shirt, and her own legs in stockings.  Similarly, other elements are taken from Edwards's life, such as the hands and posture in Exhibit 13 (*Church Girls*) which are sourced directly from a photograph of Edwards's son on his first day of Kindergarten.  These original source photographs used by Edwards cannot, by definition, serve as the basis for Roberts's copyright claim.  *See Murray Hill Publications. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 326 (6th Cir. 2004) ("where defendant owns a prior work containing the same elements, he has no reason, beyond the illicit thrill of copyright

14

infringement, to copy wrongfully from another what he could legally copy from himself."); *Muller v. Twentieth Century Fox Film Corp.*, 794 F. Supp. 2d 429, 444 (S.D.N.Y. 2011), *aff'd sub nom*, *Muller v. Anderson*, 501 F. App'x 81 (2d Cir. 2012) ("Indeed, where an element occurs both in the defendant's prior work and the plaintiff's prior work, no inference of copying can be drawn.").

Roberts's claims are particularly hypocritical because she—like any artist who practices photo-based collage—benefits substantially from the latitude copyright law affords artists to incorporate pre-existing material into their works.  *See, e.g.*, *Cariou v. Prince*, 714 F.3d 694, 710 (2d Cir. 2013) (holding that although defendant used key portions of certain plaintiff's photographs, "[he] transformed th[o]se photographs into something new and different," and therefore did not violate plaintiff's copyright); *Blanch v. Koons*, 467 F.3d 244, 246 (2d Cir. 2006) (holding that defendant, an artist "known for incorporating into his artwork objects and images taken from popular media and consumer advertising," made fair use of plaintiff's painting). Indeed, without these very protections, Roberts's own work would infringe the photographs she freely utilizes as her raw material.  (*See, e.g.*, fig. 16.)

**Figure 16**[17]



2. ***The Protectable Elements Of The Works Are Substantially Dissimilar***

To state a claim for copyright infringement, a plaintiff must plead that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial

---

[17] From left to right: Gordon Parks, *Muhammad Ali* (1966), gelatin silver print; Deborah Roberts, *This ain't no fairytale* (2018), mixed media and collage on paper, 30 x 22 in.;  Susan Meiselas, *Twins, Vossburg, Mississippi, 1974* (1974); Deborah Roberts, *the unseen* (2020), mixed media collage on canvas, 65 x 45 in (SAC Ex. 24 at 7).

similarity exists between the defendant's work and *the protectible elements* of plaintiff's." *Fortgang v. Pereiras Architects Ubiquitous LLC*, 230 F. Supp. 3d 77, 83 (E.D.N.Y. 2017) (granting defendants' motion to dismiss) (quotation omitted; emphasis added); *Montgomery v. NBC Television*, 833 F. App'x 361, 363 (2d Cir. 2020) (affirming dismissal of copyright claim). Where, as here, a plaintiff's work "is not wholly original, but rather incorporates elements from the public domain" or other pre-existing sources, "a more refined analysis is required." *Schleifer v. Berns*, 2017 WL 3084406, at *3 (E.D.N.Y. July 19, 2017) (granting motion to dismiss) (quotation omitted); *Gaito*, 602 F.3d at 66 (describing this "more discerning" approach). Specifically, the analysis must *exclude* elements that are not original—such as the clippings of "found" source photographs used in Roberts's work—and compare "only those elements[] that provide copyrightability." *Schleifer*, 2017 WL 3084406, at *3. Roberts is thus tasked with identifying "*precisely* the particular aesthetic decisions—original to [Roberts] and copied by [Edwards]—that . . . make the designs similar in the aggregate." *Canal+ Image UK Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 439 (S.D.N.Y. 2011) (dismissing claims where protectable elements were dissimilar, and setting was not protectable) (quotation omitted; emphasis added); *see also Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995) ("[W]here we compare [works] that contain both protectible and unprotectible elements, our inspection must be 'more discerning'; we must attempt to extract the unprotectible elements from our consideration and ask whether the *protectible elements, standing alone*, are substantially similar.") (emphasis original).

While Roberts has pointed to the Second Circuit's "total concept and feel" test for substantial similarity, this does not save Roberts's claim. Even that test addresses only the "concept and feel" of the protectable elements of the works, and requires the Court to first strip out the unprotected elements before assessing the total concept and feel—which in this case include the subject of Black children, the collage style, the historical or non-original source photographs, the concept of working with hand-drawn or hand-painted details, the use of patterns,

and the colorless or featureless background.  *See Canal+ Image UK Ltd.*, 773 F. Supp. 2d at 428;

*Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 73 (2d Cir. 2020).  By contrast, the protectable elements

of Roberts's works would include only those elements that are "aesthetic expressions original to

the allegedly infringed work".  *Gaito*, 602 F.3d at 67.  Here, even a cursory comparison of the

complaint's side-by-side exhibits shows that the protectable elements of the compared works lack

substantial similarity.

**Figure 17**



Take Exhibit 24, for example, where Roberts compares Edwards's *Jewel* (2020), collage

on board, 10 x 8 inches, to Roberts's *Mixed hues* (2019), mixed media and collage on canvas (no

dimensions are disclosed).  (Fig. 17; SAC, Ex. 24 at 3.)  Besides the obvious difference that *Jewel*

features a girl and *Mixed hues* features a boy, *Jewel*'s subject holds a large, overlapping

assemblage of brightly colored flowers—which is entirely absent from *Mixed Hues*—and uses

entirely different colors to the palette in *Mixed Hues*.  The girl in *Jewel* is wearing a voluminous,

mixed-color and collage-style skirt and exaggeratedly-oversized boots, whereas the boy in *Mixed*

*Hues* is wearing proportional and flat shoes and shorts.  The girl's face is not collaged, made up

of a single source photograph, with eyes cast down in a pensive pose; the boy in *Mixed Hues*, by

contrast, has a fragmented, cubist face made up from several underlying source photographs and

stares directly and captivatingly at the viewer.  The only similarities between the works are that

they depict Black children walking against a colorless background—all unprotectable elements that are not, and cannot be, unique to Roberts's works.  *See Rentmeester*, 883 F.3d at 1121 (Michael Jordan's recognizable "jump man" pose is not protectable by the photographer).  The protectable elements that remain are substantially dissimilar.

Exhibit 18 suffers from the same deficiencies.  It depicts different girls with different faces and different hairstyles, facing different orientations and in different poses, wearing different clothes and boots, in different colors and patterns.  The only apparent similarities are patently unprotectable elements such as use of collage and the concept of a Black child walking against a colorless background.  Exhibit 16 likewise shows different girls, different clothes and colors, different expressions and poses, a different number of subjects, and different hairstyles, among other distinctions; the only similarity is the presence of stripes on (different) clothing and the image of (different) popsicles.  (Fig. 18; SAC, Ex. 16).   But Roberts can hardly claim a copyright to stripes or popsicles.  The same is true of Exhibit 11, which depicts different girls, with a different number of subjects and arrangement, against different backgrounds, in different poses and wearing different clothing, with the only similarities being identified as a figure with a (different) raised hand and bows in the hair.  Again, Roberts cannot hold a copyright in hand positions or bows. (Fig. 19; SAC, Ex. 11.)  The remainder of the compared works suffer from exactly the same flaws—they depict different subjects or number of subjects, in different poses and arrangements, with different clothing and colors and patterns, and different hairstyles.  (SAC, Exs. 4-18.)

**Figure 18**                                          **Figure 19**




In short, Roberts's new exhibits only serve to underscore that the similarities at issue are those of style and theme alone.  And when these unprotected elements of the works are stripped out, it is apparent that the "total concept and feel" of the works' protected elements are completely different.  Whereas Edwards's works are often filled with color and movement, exuding a sense of whimsy and play and incorporating multiple different patterns woven together in a fragmented and busy manner, Roberts's works are filled with fewer and more muted colors, with more of a flat and somber affect and only a smattering of patterns woven in for more limited dimensionality. In sum, any viewer who has spent even a little time with these works would be able to quickly pick out identifying differences in feel and style. (*See, e.g.,* Fig. 30, comparing SAC, Exs. 11, 15, 16, 17.)  *See Gaito*, 602 F.3d at 67 (examining the "total concept and feel" of two designs and finding no infringement where "the overall visual impressions of the two designs are entirely different.").

**Figure 20**



### C.    Edwards's Works Are Protected By Fair Use

In any event, Edwards's works are protected by the doctrine of fair use as a transformation in pursuit of "new expression, meaning, or message."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994); 17 U.S.C. § 107.  This transformation is apparent not only in the different aesthetic character of the works, *see, e.g.*, *Cariou*, 714 F.3d at 707-08, but also in the artists' statements of their intent or purpose, *see, e.g.*, *Blanch*, 467 F.3d at 252 ("The sharply different objectives that [Defendant] had in using, and [Plaintiff] had in creating, "Silk Sandals" confirms the transformative nature of the use").  Roberts describes her work as a "social commentary,"

"challeng[ing] the notion of universal beauty" and concepts of "otherness" through the form of young boys and girls who "are still unfixed in their identity."[18]   Edwards, on the other hand, explains that her subjects are intensely personal and intimate, "reflect[ing] racial, political, social concerns that the artist has experienced firsthand" including through her Southern religious upbringing, each "an iteration of [her]self at various ages, navigating the isolating tension of being artistically inclined, Black, and female."[19]   If "looking at the [works] side-by-side," the secondary use "ha[s] a different character . . . new expression, and employs new aesthetics with creative and communicative results distinct" from the original, the work is "transformative as a matter of law." *Cariou,* 714 F.3d at 707-08.   These clear distinctions reveal themselves on the face of the works, in a side-by-side comparison, that requires dismissal.   *See Marano v. Metro. Museum of Art*, 844 F. App'x 436, 438 (2d Cir.), *cert. denied*, 211 L. Ed. 2d 92 (2021) (affirming dismissal of copyright claim); *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178–79 (2d Cir. 2016) (same).

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR TRADE DRESS INFRINGEMENT

A plaintiff asserting a trade dress infringement claim under the Lanham Act,  15 U.S.C. § 1051 *et seq.*, must "(1) offer a precise expression of the character and scope of the claimed trade dress; (2) allege that the claimed trade dress is non-functional; (3) allege that the claimed trade dress has secondary meaning; and (4) allege that there is a likelihood of confusion between the plaintiff's good and the defendant's [good]."   *Rosenshine v. A. Meshi Cosms. Indus. Ltd.*, 2020 WL 1914648, at *9 (E.D.N.Y. Mar. 30, 2020) (dismissing trade dress claims); *Ward v. Andrews McMeel Pub., LLC*, 963 F. Supp. 2d 222, 235 (S.D.N.Y. 2013) (same).   Failure to adequately plead each of these elements requires dismissal.   *Id.*   The Court should dismiss Roberts's claim for trade dress infringement (SAC ¶¶ 98-101) because she has not adequately pled the first two elements.

---

[18] Available at http://www.deborahrobertsart.com/artist-statement.
[19] Available at https://www.platformart.com/artworks/lynthia-edwards/dancing-girls-with-red-nail-polish.

**A.     Roberts Cannot Offer The Precise Expression Of The Character And Scope Of The Claimed Trade Dress**

As this Court has recently opined, "it is well established that, even where a plaintiff attaches photographs of his or her trademark to the complaint, a plaintiff must still articulate the elements of their product design with specificity to be afforded trade dress protection, to satisfy the first element of a trade dress infringement claim." *Rosenshine*, 2020 WL 1914648, at *9 (internal quotation marks omitted); *see also Eliya, Inc. v. Steven Madden, Ltd.*, 749 F. App'x 43, 47 (2d Cir. 2018) (affirming dismissal where the photos of the claimed trade dress could not make up for a deficiency in plaintiff's precise expression of its distinctive features). Though Roberts has supplied the Court with a number of photos of her works (*see e.g.*, SAC ¶ 45, Exs. 1, 4-18, 24), she does not and cannot articulate the elements of her works with the specificity necessary to plead a claim of trade dress infringement. (*See id*. ¶¶ 45-60.) This deficiency is all the more fatal because Roberts seeks protection over "one or more series of fine-art collages" (*id*. ¶ 45), which requires a heightened degree of specificity. *See Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2d Cir. 1997) ("a trade dress plaintiff seeking to protect a series" "faces the particularly difficult challenge of showing that the appearance of its several products is sufficiently distinct and unique to merit protection"). Roberts's discussion of elements that are present in hundreds if not thousands of works of Black American art does not come close to satisfying the applicable standard. (SAC ¶¶ 48-49.)

The term "trade dress" refers to "how a product looks, its total image, or its overall appearance" and is generally understood to mean "a product's composition and design, including size, shape, color, texture and graphics." *Mana Prods., Inc. v. Columbia Cosms. Mfg., Inc.*, 65 F.3d 1063, 1068 (2d Cir. 1995). However, the law does not protect the trade dress of what is essentially an idea or concept. *See Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 597 (E.D.N.Y. 2017) (holding that trade dress law, much like copyright law, does not protect ideas,

concepts, or a generalized type of appearance, and dismissing trade dress claims on the pleadings based on "the idea of using die-cut photographs on greeting cards") (quoting *Jeffrey Milstein, Inc. v. Greger, Lawlor, Rocth, Inc.*, 58 F.3d 27, 29, 32 (2d Cir. 1995)).  Just as the "idea of using die-cut photographs on greeting cards" is legally insufficient to support a claim, *id.*, so too the idea of using photo-collage is not enough to survive dismissal.

*Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*, 916 F.2d 76, 81 (2d Cir. 1990), is instructive.  There, the plaintiff sought trademark protection for its baroque-style silverware line that the court determined used "essentially the same scrolls and flowers" common to all "baroque-style designs used in the silverware market." *Id.* at 80.  Where, as here, protection is sought "not for a precise expression of a decorative style, but for basic elements of a style that is part of the public domain," a claim cannot be sustained.  So too here.  Even if Roberts's and Edwards's works share certain aesthetic themes and features beyond photo-collage, the elements pled by Roberts are all general concepts—such as  "Black children or adolescents" or "colorful, patterned fabric swatches" (SAC ¶ 48)—that are ubiquitous in Black American art.  Because none of those elements are specific to Roberts, the Court should dismiss Roberts's claim on this basis alone.

**B.**     **The Elements Cited As Trade Dress Are Aesthetically Functional**

Further, because all of the allegedly "trade dress" elements pled by Roberts are aesthetically functional, they are ineligible for trade dress protection.  (SAC ¶¶ 48-49.)  "A product feature is considered to be functional in a utilitarian sense if it is (1) essential to the use or purpose of the article, or if it (2) affects the cost or quality of the article." *Christian Louboutin S.A. v. Yves St. Laurent Am. Holding, Inc.*, 696 F.3d 206, 219 (2d Cir. 2012) (internal quotation omitted).  If an aesthetic feature satisfies both prongs of the traditional functionality test, "the design feature is functional . . . and [the court's] inquiry ends." *Id.* at 220.

Here, the use of images of Black children and elements such as photo-collage, stripes, patterns, expressive hand gestures, and a plain background, are all "essential to the use of purpose"

22

of the artworks—which are themselves the mark.   *See Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 165 (1995) (holding that when the aesthetic design of a product is *itself* the mark for which protection is sought, the mark may be deemed functional); *Jeffrey Milstein*, 58 F.3d at 29, 32 (holding that trade dress law does not protect the aesthetically functional concept and general appearance of die-cut photographs).   These aesthetic features of photo-collage, colorful fabrics and patterns, and "unnatural arrangements" of subjects against a stark background are necessary elements of any artwork looking to enter the visual conversation rooted in this historical tradition and employed by Black American artists from the mid-twentieth century forward.   (SAC ¶ 48) These elements undoubtedly affect the cost and quality of the works.   Simply put, Roberts's claimed trade dress consists of nothing but aesthetically functional elements meant to anchor both her and Edwards's work to the tradition of Black American visual storytelling.

Indeed, "when the aesthetic design of a product is *itself* the mark for which protection is sought," the court "may also deem the mark functional if giving the markholder the right to use it exclusively 'would put competitors at a significant non-reputation-related disadvantage.'" *Christian Louboutin S.A.,* 696 F.3d at 219-20 (quoting *Qualitex Co.*, 514 U.S. at 165).   That is the precisely case here.   Roberts is not wrapping her "product" in source-identifying branding, or dressing up her "product" in a separate non-functional label that signifies its creator.   This is not the McDonald's golden arch used to sell french fries, or the Nike swoosh used to sell shoes.   The art is not dressed up with a distinct non-functional brand or label—the art itself is the product.   In that circumstance, the artistic elements that Roberts employs in her art are functional (*i.e.*, photo-collage, Black subjects, use of patterns and stripes and plain backgrounds).   Giving her the exclusive right to use these elements either individually or in tandem would certainly put competitors—other artists—at a significant disadvantage by granting Roberts a sweeping monopoly over an entire artistic style that she didn't even create, simply because she's successful at it.   It would rob artists like Edwards, and every other contemporary or future artist working in

23

this style, of being able to create art within this historical conversation and tradition. This is not a result that the law intends. For this reason, where, as here, "an ornamental feature is claimed as a trademark and trademark protection would significantly hinder competition by limiting the range of adequate alternative designs, the aesthetic functionality doctrine [also] denies such protection." *Bubble Genius LLC,* 239 F. Supp. 3d at 594 (internal quotations omitted).

C.   **Roberts's Allegations Of Confusion And Secondary Meaning Are Irrelevant In Light Of Her Failure To Plead The First Two Elements**

Because Roberts has not sufficiently pled the non-functionality of her trade dress or that distinctive features capable of trade dress protection do in fact exist, "the court need not . . . reach the question of whether the likelihood of the parties' products causing consumer confusion is plausible." *Bubble Genius LLC,* 239 F. Supp. 3d at 601; *Christian Louboutin S.A.*, 696 F.3d at 217 ("[I]f (and only if) the plaintiff's trademark is 'distinctive' within the meaning of trademark law and is therefore valid and protectable, [do we] then determine whether the defendant's use of a similar mark is likely to cause consumer confusion."). For the same reason, the Court also need not determine whether Roberts has adequately pled that the claimed trade dress has secondary meaning. *See Sure Fit Home Prod., LLC v. Maytex Mills, Inc*., 2021 WL 2134863, at *4 (S.D.N.Y. May 26, 2021), *aff'd*, 2022 WL 1073209 (Fed. Cir. Apr. 11, 2022) ("If a plaintiff fails to prove that its purported product design trade dress is nonfunctional, there is no need for a court to analyze whether it has acquired secondary meaning.").

Even if Court did reach this issue, Roberts still fails to adequately allege consumer confusion. Indeed, it is telling that many of the Edwards works that Roberts complains are infringing were never even completed or offered to market—they are incomplete studies or "works in progress"—and were therefore incapable by definition of creating market confusion. (SAC, Exs. 4, 5, 8-9, 12, 17.) *See Luv n' Care, Ltd. v. Regent Baby Prod. Corp*., 986 F. Supp. 2d 400, 406 (S.D.N.Y. 2013) (likelihood of confusion turns on whether purchaser "are likely to be misled

or confused . . . *because of the entrance in the marketplace* of defendant's mark.") (quotation omitted; emphasis added).  Equally fatal is the fact that Edwards prominently signs her artworks with her name on the front.  Indeed, the allegations and exhibits purportedly evincing consumer confusion in fact show the precise opposite:  consumers familiar with Roberts's works complaining to her that Edwards's works looked similar but were obviously not Roberts's works.  (*See, e.g.,* SAC, Exs. 20-21, 23.)[20]  Roberts's claim fails on this element as well.

**Figure 21[21]**



## Conclusion

For the above reasons, the Court should grant Defendants' motion to dismiss Plaintiff's complaint in its entirety, with prejudice.

---

[20] Although not necessary to resolve this motion, the Court should note that Roberts's reference to the "whos_who" Instagram account (SAC ¶ 76, Ex. 23) is particularly disingenuous, as the entire premise of that account is to showcase artworks by different artists that are so similar in subject and/or style that it is difficult to tell "who is who."  This post was not unique to any confusion about Roberts's and Edwards's works specifically, and indeed simply underscores the view that they—like many other artists throughout history who work in similar styles or subjects (including Nathaniel Mary Quinn and Devin B. Johnson who, like Roberts and Edwards, both work in a collage-style tradition depicting Black figures against a plain background, as shown in Figure 21)—often independently make seemingly similar artworks without accusations of infringement.

[21]  Left: Devin B. Johnson, *Cabbie* (2020), oil and stick on paper, 12 x 9 in.; Right: Nathaniel Mary Quinn, *Homeboy Down the Block* (2018).

Dated:  February 1, 2023

New York, New York

Respectfully submitted,

Quinn Emanuel Urquhart & Sullivan, LLP

By:  */s/ Maaren A. Shah*
Maaren A. Shah
Luke Nikas
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
maarenshah@quinnemanuel.com
lukenikas@quinnemanuel.com

*Attorneys for Defendants Richard Beavers*
*Gallery, Richard Beavers, and Lynthia*
*Edwards*

26