REITLER KAILAS & ROSENBLATT LLP
Robert William Clarida
Brett Van Benthysen
885 Third Avenue, 20th Floor
New York, NY 10022
Phone: (212) 209-3044
Fax: (212) 371-5500
*Attorneys for Plaintiff Deborah Roberts*

*Oral Argument Requested*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DEBORAH ROBERTS,<br><br>                              Plaintiff,<br><br>           -against-<br><br>RICHARD BEAVERS GALLERY,<br>RICHARD BEAVERS, and LYNTHIA<br>EDWARDS,<br><br>                              Defendants. | **Case No. 1:22-4516-LDH-TAM**<br><br>**Date of Service:  February 15, 2023** |

### MEMORANDUM OF LAW IN OPPOSITION TO
### <u>DEFENDANTS' MOTION TO DISMISS</u>

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF RELEVANT FACTS ............................................................................... 1

ARGUMENT ........................................................................................................................ 4

    I.     Legal Standard ..................................................................................................... 4

    II.    The Purported Factual Assertions In Defendants' Memorandum Are Irrelevant And Cannot Support A Motion To Dismiss ............................................................... 5

    III.   Plaintiff's Allegations State A Claim For Copyright Infringement ............................... 9

        A.   The Factual Allegations in the Complaint Satisfy the Second Circuit's "Total Concept and Feel" Test ........................................................................ 9

        B.   Defendants' Recitation of Differences is Irrelevant ........................................... 15

        C.   Defendants' Fair Use Argument is Without Merit ............................................. 18

    IV.   Defendants' Motion To Dismiss The Plaintiff's Lanham Act Claim Should Be Denied ..................................................................................................................... 20

        A.   Plaintiff Adequately Identifies the Trade Dress ................................................ 20

        B.   The Trade Dress is not Aesthetically Functional ............................................. 23

CONCLUSION ...................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*,
    11 F.4th 26 (2d Cir. 2021) ................................................................. 20, 21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................... 4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................ 4, 21

*Boisson v. Banian, Ltd*,
    273 F.3d 262 (2d Cir. 2001) .......................................................... 12, 13

*Bubble Genius LLC v. Smith*,
    239 F. Supp. 3d 586 (E.D.N.Y. 2017) ............................................... 23

*Cariou v. Prince*,
    714 F.3d 694 (2d Cir. 2013) ............................................................. 20

*Christian Louboutin S.A. v. Yves Saint Laurent America Holding Inc.*,
    696 F.3d 206 (2d Cir. 2012) ............................................................. 25

*de Becdelievre v. Anastasia Musical LLC*,
    2019 WL 1633769 (S.D.N.Y. April 2, 2018) ...................................... 7

*Eliya, Inc. v. Steven Madden, Ltd.*,
    749 F. App'x 43 (2d Cir. 2018) ........................................................ 23

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
    375 F.3d 168 (2d Cir. 2004) ............................................................. 4

*Fonte v. Bd. of Managers of Cont'l Towers Condo.*,
    848 F.2d 24 (2d Cir. 1988) ............................................................... 6

*Friedl v. City of New York*,
    210 F.3d 79 (2d Cir. 2000) ......................................................... 6, 7, 23

*GeigTech E. Bay LLC v. Lutron Elecs. Co.*,
    352 F. Supp. 3d 265 (S.D.N.Y. 2018) ............................................... 24

*Graham v. Prince*,
    265 F. Supp. 3d 366 (S.D.N.Y. 2017) ............................................... 21

*Harper & Row v. The Nation Enters.*,
   471 U.S. 539 (1985) ................................................................................ 5

*Hartford House Ltd. v. Hallmark Cards, Inc.*,
   647 F. Supp. 1533 (D. Colo. 1986) ...................................................... 23

*Hartford House, Ltd. v. Hallmark Cards, Inc.*,
   846 F.2d 1268 (10th Cir. 1988) ....................................................... 23, 24

*Hughes v. Design Look Inc.*,
   693 F.Supp. 1500 (S.D.N.Y. 1988) ..................................................... 23

*Innovation Ventures, LLC v. N2G Distrib., Inc.*,
   635 F. Supp. 2d 632 (E.D. Mich. 2008) .............................................. 22

*Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*,
   64 F. Supp. 3d 494 (S.D.N.Y. 2014) ................................................... 22

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
   58 F.3d 27 (2d Cir. 1995) .................................................................... 23

*Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*,
   742 F.3d 42 (2d Cir. 2014) .................................................................... 5

*Kaplan v. Stock Market Photo Agency, Inc.*,
   133 F. Supp. 2d 317 (S.D.N.Y. 2001) ................................................. 11

*Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc.*,
   945 F.2d 509 (2d Cir. 1991) ................................................................ 12

*Kisch v. Ammirati & Puris Inc.*,
   657 F. Supp. 380 (S.D.N.Y. 1987) ..................................................... 18

*Klauber Brothers, Inc. v. URBN US Retail LLC*,
   2022 WL 1539905 (S.D.N.Y. May 14, 2022) ....................................... 6

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
   71 F.3d 996 (2d Cir. 1995) ........................................................... passim

Koch v. Christie's Int'l PLC,
   699 F.3d 141 (2d Cir. 2012) .................................................................. 5

*Kramer v. Time Warner Inc.*,
   937 F.2d 767 (2d Cir. 1991) .................................................................. 6

*LaChapelle v. Fenty,*
   812 F. Supp. 2d 434 (S.D.N.Y. 2011)..................................................... 15

*Landscape Forms, Inc. v. Columbia Cascade Co.,*
   113 F.3d 373 (2d Cir. 1997)................................................................. 23

*Mannion v. Coors Brewing Co.,*
   377 F. Supp.  2d 444 (S.D.N.Y. 2005)............................................... 13, 14

*Nespresso USA, Inc. v. Peet's Coffee, Inc.,*
   2023 WL 374980 (S.D.N.Y. Jan. 24, 2023) ......................................... 22

*Oneida Indian Nation of New York v. State of N.Y.,*
   691 F.2d 1070 (2d Cir. 1982)................................................................. 7

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,*
   602 F.3d 57 (2d Cir. 2010)................................................................... 10

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,*
   274 F.2d 487 (2d Cir. 1960)............................................................ 16, 17

*Qualitex v. Jacobson Prods,*
514 U.S. 159 (1995).............................................................................. 24

*Quinones v. New York City,*
   2020 WL 5665142 (S.D.N.Y. Aug. 17, 2020) ....................................... 6

*Romm Art Creations Ltd. v. Simcha Int'l, Inc.,*
   786 F. Supp. 1126 (E.D.N.Y. 1992) ......................................... 23, 25, 26

*Rosenshine v. A. Meshi Cosms. Indus. Ltd.,*
   2020 WL 1914648 (E.D.N.Y. Mar. 30, 2020)...................................... 23

*Ruolo v. Russ Berrie & Co., Inc.,*
   886 F.2d 931 (7th Cir. 1989) .......................................................... 23, 24

*Sheldon v. Metro-Goldwyn Pictures Corp.,*
   81 F.2d 49 (2d Cir.)............................................................................. 14

*Shevy Custom Wigs, Inc. v. Aggie Wigs,*
   2006 WL 3335008 (E.D.N.Y. Nov. 17, 2006)...................................... 22

*Steinberg v. Columbia Pictures,*
   663 F. Supp. 706 (S.D.N.Y. 1987) ...................................................... 17

*Texas Chicken & Burgers, LLC v. NYQ Prop., LLC*,
  2018 WL 6718843 (E.D.N.Y. Nov. 1, 2018)........................................................ 22

*Tony Duquette, Inc. v. Michael Kors (USA), Inc.*,
  2009 WL 10674145 (C.D. Cal. Apr. 16, 2009) .................................................... 21

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
  532 U.S. 23 (2001).............................................................................................. 24

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*,
  338 F.3d 127 (2d Cir. 2003)............................................................................ 14, 19

*Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*,
  916 F.2d 76 (2d Cir. 1990)................................................................................ 24

*Wright v. Warner Books*,
  953 F.2d 731 (2d Cir. 1991).............................................................................. 21

**Statutes**

15 U.S.C. 1125(a) ................................................................................................ 21

17 U.S.C. 106(2) .................................................................................................. 10

17 U.S.C. 107 ....................................................................................................... 19

**Rules**

Fed. R. Civ. Pro. Rule 8 ...................................................................................... 4, 21

Fed. R. Civ. Pro. Rule 12 .................................................................................... 6, 25

**Other Authorities**

*Copyright, Originality, and the End of the Scenes a Faire and Merger Doctrines for Visual Works,* 58(3) Baylor L. Rev. 779, 852-853 (2006) .................................................. 9, 19

Plaintiff Deborah Roberts ("Plaintiff" or "Roberts") respectfully submits this memorandum of law in opposition to the motion to dismiss the Second Amended Complaint ("Complaint" or "SAC") filed by defendants Lynthia Edwards ("Edwards"), Richard Beavers ("Beavers"), and Richard Beavers Gallery ("RBG," and collectively, "Defendants").

## STATEMENT OF RELEVANT FACTS

The relevant facts are fully set forth in the SAC (ECF No. 18), incorporated herein by reference.  They may be summarized as follows:

Plaintiff is a well-known American visual artist, whose series of fine-art collages are sold around the world and held in the collections of many prominent museums. (SAC ¶¶1-2, 4). Plaintiff's collages combine found and manipulated fragments of photographs of fabric swatches with hand drawn and painted details, and feature Black children and adolescents as subjects, either individually or in small groupings, set against solid, unpatterned backgrounds (the "Roberts Collages"). (SAC ¶3).  Several of the Roberts Collages are registered in the U.S. Copyright Office as registration number VAu001447951, VA0002308317, VA0002326947, VA0002326950, VA0002326953, VA0002330970, VA0002330963 and VA0002331172 (the "Registered Collages"). (SAC ¶6 and Exhibit 2 thereto).  Roberts Collages have been the subject of extensive media commentary and coverage. (SAC ¶5).

The Roberts Collages are of a distinctive, nonfunctional overall appearance, comprising a combination of the following specific elements: subject matter featuring Black children or adolescents, either individually or in small groupings; black-and-white or high-contrast photographic fragments of facial features, hair, arms, legs, hands and feet, assembled in angular, unnatural arrangements; expressive hand gestures; colorful, patterned fabric swatches; hand-drawn or hand-painted details; plain, unpatterned backgrounds (collectively, the "Trade Dress"). (SAC ¶¶45-60).

Plaintiff has developed and promoted the Trade Dress at considerable expense, making a significant investment in developing an overall look for the Roberts Collages that is distinctive and immediately recognized by members of the relevant public as an indicator that Plaintiff is the source of the collages. (SAC ¶52).  As a result of Plaintiff's efforts in developing and promoting the Roberts Collages, including the Trade Dress, consumers have come to associate and identify the Roberts Collages as products of high quality that originate from a single source with a reputation for quality, namely Plaintiff. (SAC ¶¶55-56).

Defendants, without any authority from the Plaintiff, have prepared, reproduced, publicly displayed and publicly distributed a number of collages copied from and substantially similar to the Roberts Collages (the "Infringing Collages"). (SAC ¶9).

Beavers communicated directly with Plaintiff and asked Plaintiff to allow her collages to be sold at RBG. (SAC ¶¶20-21).  In a text message dated April 13, 2020, Beavers wrote "so many of my clients have you on their wishlist of artists whose work they would like to acquire for their collections." (SAC ¶22).  Plaintiff declined Beavers' request, whereupon, on information and belief, Beavers and/or RBG made arrangements with Edwards to create and sell the Infringing Collages. (SAC ¶23).  Not later than June 2020, Edwards largely discontinued her previous artistic practice and began marketing the Infringing Collages, which were publicly displayed and sold or offered for sale to the public by RBG and/or Beavers in his individual capacity. (SAC ¶38). The Infringing Collages continue to be publicly displayed or sold or offered for sale both on the RBG premises and at other locations. (SAC ¶39).

Defendants had a reasonable opportunity to view the Registered Collages prior to the making of the Infringing Collages, because photographs of the Registered Collages were widely disseminated. (SAC ¶37).

The Infringing Collages are copied from and substantially similar to the Registered Collages and mimic the Trade Dress. (SAC ¶¶56-58).  In one or more instances, the Defendants' copying has gone so far as to incorporate the same photographic source material that Plaintiff selected for inclusion and use in the Registered Collages. (SAC ¶43).

Defendants found that the more the Edwards collages resembled the Roberts Collages, the more successful the Edwards collages became with purchasers. (SAC ¶58).  Defendants have aggressively marketed the Infringing Collages, including by promoting them at one or more high-profile national art fairs at which Plaintiff has also promoted and sold the Roberts Collages, including without limitation the EXPO CHICAGO and Untitled Art Miami Beach. (SAC ¶59).

The Defendants' imitation of the Trade Dress has caused actual consumer confusion including actual confusion among one or more members of the relevant public, who have mistakenly believed the Infringing Collages to have originated with Plaintiff. (SAC ¶61).  The confusingly similar trade dress of the Infringing Collages has also been recognized in unsolicited media coverage by observers who comment on the relevant art market. (SAC ¶68).  For example, in a recent edition of Sugarcane Magazine dated January 13, 2022, Angela N. Carroll published an article entitled "Ethics and Controversy: Reviewing Appropriation in Black Art" (the "Carroll Article"). (SAC ¶¶69-76 and Exhibit 22).  The Carroll Article documented a "notable uptick in the display of lesser-known artists whose styles were almost identical to prominent African-American artists" (SAC ¶70).  The Carroll Article singled out the Defendants' Infringing Collages, shown and sold at Untitled Art Miami Beach in 2021, as mere "Deborah Roberts shadow play" and "perhaps the most disturbing and disturbingly obvious" example of appropriation encountered at that event.

The Infringing Collages, and their marketing to Plaintiff's primary base of customers, are therefore far outside the norms of the relevant artistic and commercial community, and struck a

discerning member of that community as "disturbing" and "disturbingly obvious." (SAC ¶73). Prior to the significant financial and critical success of the Roberts Collages, Defendants had never previously marketed any collages or other works that were substantially or confusingly similar to the Roberts Collages. (SAC ¶79).

## ARGUMENT

### I.     Legal Standard

On a motion to dismiss for failure to state a claim upon which relief can be granted, a court must view the complaint in the light most favorable to the plaintiff, and the plaintiff's factual allegations must be taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under Rule 8(a)(2) a pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Rules do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007).

The task of the court in ruling on a Rule 12(b)(6) motion is "not to assay the weight of the evidence." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004). Rather, the inquiry focuses on whether the pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. As such, courts do not "impose a probability requirement at the pleading stage." *Id*. at 556. Because plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible, and thus will sustain a claim.

In addressing the sufficiency of a complaint under Rule 12(b)(6) a court must draw all reasonable inferences in favor of the plaintiff. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). In addition to the well pleaded allegations, a court may consider "any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated

in it by reference." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n. 1 (2d Cir. 2014).

In this case, the Court is compelled to address multiple fact issues, including the substantial similarity of the "total concept and feel" of the parties' works. The Supreme Court long ago established that fair use is not simply a legal question, but a "mixed question of law and fact." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985). Plaintiff's Lanham Act claim also raises a number of fact issues, including the relevant market for purposes of evaluating likelihood of confusion and the degree to which protecting Plaintiff's Trade Dress would significantly hinder competition in that market. For these reasons, Defendants motion to dismiss should be denied in its entirety.

## II. The Purported Factual Assertions In Defendants' Memorandum Are Irrelevant And Cannot Support A Motion To Dismiss

Defendants include in their motion images of paintings and photographs from other historical and contemporary artists and make assertions of fact relating to the images and the artists, without providing support or attribution for either. Def. Mem. at pp. 6-9, 25, figures 1-13, 21. For example, Defendants proclaim that "Picasso and Braque both developed the style of analytic cubism" and were influenced by "Chinese calligraphy," that Lawrence and Bearden appropriated techniques such as "the piercing of quilts and the papering of walls of Southern homes," and make other statements that could be easily mistaken for lessons from an art history text in a deliberate effort to misconstrue Plaintiff's copyright claim.

Aside from the fact that there is not a single citation to the source for Defendants' purported historical facts, the approach itself is improper. "In considering a motion to dismiss . . . a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner Inc.*, 937 F.2d

767, 773 (2d Cir. 1991) (citations omitted).  "Factual allegations contained in legal briefs or memoranda are also treated as matters outside the pleading for purposes of Rule 12(b)." *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988); *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000); *Quinones v. New York City*, 2020 WL 5665142, at *13 (S.D.N.Y. Aug. 17, 2020) ("statements made or implied only in a defendant's legal brief cannot provide a factual predicate for dismissal") (citations omitted).  Therefore, the entirety of Defendants' excursion into art history is procedurally improper and can have no bearing on the Court's decision of this motion.

*Klauber Brothers, Inc. v. URBN US Retail LLC*, 2022 WL 1539905 (S.D.N.Y. May 14, 2022), a recent copyright infringement case concerning lace patterns on dresses, is instructive.  The defendants asked the court in connection with their motion to dismiss to take judicial notice of photos of lace samples and "of the fact that the lace featured in the exhibits [samples] showcases historical and common lace design and design elements."  The court declined and held as follows:

> It cannot be readily determined that those designs are representative of common lace designs or design elements—indeed, the exhibits are most readily understood as merely showing fourteen specific, discrete lace samples.  Thus, the Court cannot accurately or readily determine that those photos are, in fact, representations of common or historical lace designs or design elements.

*Id*. at *3.

Without even asking the Court to take judicial notice, Defendants here offer the images and unsupported factual assertions for the same purpose, *i.e.*, as a pretext for their misguided argument that Plaintiff is seeking to copyright a style or tradition.  However, the Defendants' images and accompanying statements are not entitled to consideration at the pleading stage. *Friedl*, 210 F.3d at 83-84.  The alleged facts cannot provide a predicate for dismissal.  *Oneida Indian Nation of New York v. State of N.Y.*, 691 F.2d 1070, 1986 (2d Cir. 1982) (at the pleading

6

stage "when facts or opinions found in historical materials or secondary sources are disputed, it is error to accept the data (however authentic) as evidence") (citation omitted).[1]  As this action proceeds, the parties will have ample opportunity to provide expert testimony about art or history to the extent it is relevant and otherwise admissible.  Defendants may not do so on this motion.

To the extent that the Court considers Defendants' unsupported, unsourced images and remarks for any purpose on this motion, Plaintiff disputes them, and disputes the inferences Defendants ask the Court to draw from them.  First, the tradition which Defendants repeatedly invoke but never define is a red herring having nothing to do with Plaintiff's claims.  Romare Bearden, Jacob Lawrence, Faith Ringgold, *et al.*, created collages that look nothing like the Roberts Collages, as Defendants' own cherry-picked examples at pages 8-9 of their brief demonstrate.  The works of these artists have never led to any instances of actual confusion with Plaintiff's works, unlike the Infringing Collages, which have.  The allegations against Defendants here concern copying of Plaintiff's intellectual property, *not* merely being part of the tradition of Black collage, however Defendants may define it.  It could equally be said that there is also a long tradition of books about the adventures of quirky young men, but that does not excuse an author who infringes the Harry Potter novels.

Moreover, even if the relevant tradition is limited to "depicting Black children in mixed-media collage," Def. Mem. at 11, the same objection applies.  Numerous artists work in this field, including Christa David, Levett Ballard, Clotilde Jimenez, Sharon Walters, Vahge, Thandiwe

---

[1] *See also de Becdelievre v. Anastasia Musical LLC*, 2019 WL 1633769, *1 (S.D.N.Y. April 2, 2018) ("Defendants' motion asks me to dismiss a claim for copyright infringement by comparing the copyrighted work to facts that are alleged to be historical, to another play based on the same facts, and to a current work that is said to be infringed. . . . before Answers are filed, and without guidance by experts. I am unable to make such a complicated comparison.  In order to do so, I would need to take judicial notice of facts said to be historical—an inappropriate exercise.").

Muriu, Judy Bowman, Heather Polk, and Bria Sterling Wilson.  Representative works of are shown below.  None of them create works that look anything like the Roberts Collages.

  

Clearly, it is possible to create collages featuring images of Black children without giving rise to confusion with Plaintiff's works.  Defendants' argument to the contrary must be rejected at the pleading stage.

Moreover, Plaintiff alleges (and Defendants have not disputed) that Edwards did not fortuitously happen to discover her affinity for this tradition and begin working in collage as a natural evolution of her prior practice.  (SAC at ¶57).  To the contrary, immediately prior to beginning the alleged infringing conduct, Edwards' work looked nothing like the Infringing Collages.  The following are examples of Edwards' work from just prior to 2020:



---

[2] From left to right, https://www.artsy.net/artwork/christa-david-no-bottom-dot-no-top-dot-just-circles; http://www.lizfaust.com/issue-no-1; https://bakerartist.org/portfolios/bria-sterling-wilson.

[3] https://www.kentuck.org/museum-gallery-2021/lynthia-edwards, [accessed 2/14/23]

Finally, Defendants' references to artists from other traditions, such as Picasso and Braque, (Def. Mem. at 6), are even further afield. To the extent Defendants would have the Court believe that copying is inevitable between artists working in the same "tradition," Plaintiff disputes that inference. As law professor Michael Murray has observed:

> Monet and Renoir stood side by side painting bathers at La Grenouillere (the "Frog Pond") and practicing the principles of Impressionism, the school of art that they founded, yet each produced a singular, original work indicative only in the one case of Monet's hands and in the other of Renoir's hands. However, if one copied the other's work, the similarity might have been staggering.

*Copyright, Originality, and the End of the Scenes a Faire and Merger Doctrines for Visual Works,* 58(3) Baylor L. Rev. 779, 852-853 (2006).

So too here. Merely practicing within a "style" or a "tradition" does not inevitably result in infringement. Copying the work of another artist, as alleged herein, results in infringement.

## III.   Plaintiff's Factual Allegations State A Claim For Copyright Infringement

To state a claim of copyright infringement a plaintiff must allege actual copying by the defendant and that the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's work. *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010). On a motion to dismiss, actual copying is assumed and thus the focus is on substantial similarity. *Id.*

### A.  The Factual Allegations In The Complaint Satisfy The Second Circuit's "Total Concept and Feel" Test

To determine substantial similarity, the Second Circuit applies a "total concept and feel" standard, viewed from the perspective of the "ordinary observer," as articulated in *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996 (2d Cir. 1995). There, the Second Circuit found infringement between the parties' autumn-themed sweater designs, both of which featured simply-rendered leaves and squirrels as prominent design elements.



EX. 3: KNITWAVES' SQUIRREL SWEATER    EX. 4: LOLLYTOGS' SQUIRREL SWEATER    4

The selection of squirrels and leaves as subject matter was itself deemed a significant element of the protectable authorship and of the infringement:

> Knitwaves' "original contribution" consists . . . in (1) selecting leaves and squirrels as its dominant design elements; (2) coordinating these design elements with a "fall" palette of colors and with a "shadow-striped" . . . . or a four-paneled background; and (3) arranging all the design elements and colors into an original pattern for each sweater … Not only do Lollytogs' renderings of [the two fall] symbols substantially resemble Knitwaves' renderings, but Lollytogs has employed them in virtually the same manner as Knitwaves has … on strikingly similar backgrounds … An observer viewing the sweaters side by side *cannot help but perceive them as coming from the same creative source.*

*Id.* at 1004 (emphasis added).

That is exactly the result that the Infringing Collages create here; as demonstrated by the instances of actual confusion referenced in the SAC, ordinary observers view them as coming from the same creative source as the Registered Collages, namely Deborah Roberts.

The Second Circuit in *Knitwaves* protected plaintiff's design even though the defendant's sweaters featured different squirrels and different leaves arranged in a different pattern.   *Id.* at

---

[4] The plaintiff's design is shown on the left, images are reproduced in the Court's opinion. *Knitwaves,* 71 F.3d at 1013.

1003.  It was the combination of these unprotectable elements in the Knitwaves sweater, and the overall "manner" of using them, which deserved protection.[5]

Thus the plaintiff's *selection* of squirrels and leaves was part of the protectable authorship in the work.  The plaintiff did not *create* squirrels or leaves, certainly, or own the *idea* of squirrels or leaves as symbols of autumn, but plaintiff's creative choice of *selecting* them as a dominant design element for its sweater was part of its protectable authorship, and defendant infringed by copying, *inter alia*, that selection.  The same is true here.  Plaintiff did not create the photograph taken by Jill Freedman, or the idea of combining it with photographs of fabric swatches and other elements, but by copying that selection, and that manner of combining the elements, Defendants have committed infringement.

The Second Circuit in *Boisson v. Banian, Ltd*, 273 F.3d 262 (2d Cir. 2001), relied on *Knitwaves* to find that plaintiff's quilt design entitled "School Days I" (shown below at left) was infringed by defendant's quilt "ABC Green II" (shown below at right):



---

[5] Defendants here make liberal use of the word "style" throughout their brief without ever offering a definition.  On this motion, seeking to overcome the plaintiff's statutory presumption of a valid copyright, it is Defendants' obligation to do so.  But whatever they might mean by "style," it cannot not be so broad as to conflict with the Second Circuit's holding in *Knitwaves* that the author's "manner" of using the selected design elements is part of a work's protected expression.  Defendants here seem to offer a self-serving tautology, *i.e.* (1) all creative, aesthetic decisions made by the author are part of a "style," (2) "style" is unprotectable, therefore (3) all creative, aesthetic decisions made by the author are unprotectable.  Clearly the Second Circuit disagrees.  *See also Kaplan v. Stock Market Photo Agency, Inc.,* 133 F. Supp. 2d 317, 324 (S.D.N.Y. 2001)(holding that "the ***stylistic*** elements of the image itself" are an aspect of protectable "expression," not "unprotectable idea")(emphasis added).

[6] https://guides.lib.umich.edu/substantial-similarity/boisson, [accessed 2/12/23]

The *Boisson* Court recognized that many elements of the plaintiff's work were not original to plaintiff – and as Defendants erroneously stress here, those elements in *Boisson* derived from a long tradition of alphabet quilts.  That did not, however, permit the Court to "white out," erase, or disregard those traditional elements, even when applying the "more discerning ordinary observer" standard urged here by Defendants.  Defendants cite the compilation case of *Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc.,* 945 F.2d 509 (2d Cir. 1991) as the "governing legal test" on this issue, and to require the "stripping out" of uncopyrightable elements, but that is false.  In *Boisson,* the Second Circuit specifically clarified *Key Publications* to hold that:

> [A] court is ***not to*** dissect the works at issue into separate components and compare ***only*** the copyrightable elements . . . .  To do so would be to take the 'more discerning' test to an extreme, which would result in almost nothing being copyrightable because original works broken down into their composite parts would usually be little more than basic unprotectible elements like letters, colors and symbols.

273 F.3d at 272 (emphasis added).

The Second Circuit has therefore squarely repudiated the argument made by Defendants here that a court must "strip out" unprotectable elements when comparing the parties' works. (Def. Mem. at 19).  *Boisson* notes that this approach – "comparing feature-by-feature only the protectible elements" – is an obsolete relic of a time "pre-dating *Knitwaves*."  273 F.3d at 273.  Defendants' entire substantial similarity analysis is therefore predicated on superseded caselaw that the Second Circuit abandoned no later than the *Knitwaves* ruling almost thirty years ago.[7]

Relying on *Boisson*, the Southern District of New York held that plaintiff's photograph of NBA star Kevin Garnett was infringed by a similar photograph in an ad for Coors beer, despite the

---

[7] The fact that Defendants themselves cite *Knitwaves* (Def. Mem. at 16), without addressing this fatal incongruity, bespeaks either ignorance of the evolution of this Circuit's law on substantial similarity or a willful attempt to mislead the Court about what the law actually is.

fact that the copied elements of the plaintiff's work were "arguably in the public domain." *Mannion v. Coors Brewing Co.,* 377 F. Supp. 2d 444 (S.D.N.Y. 2005). The Court held that elements "such as the existence of cloudy sky, Garnett's pose, his white T-shirt, and his specific jewelry – may not be copyrightable in and of themselves, but their existence and arrangement in this photograph indisputably contribute to *its* originality. Thus the fact that the Garnett Photograph includes certain elements that would not be copyrightable in isolation ***does not affect the nature of the comparison***. The question is whether the aesthetic appeal of the two images is the same." *Id.* at 462 (emphasis added).

The court in *Mannion* conducted the *same comparison* of the parties' works regardless of the presence of uncopyrightable elements in plaintiff's work. It did not strip out the uncopyrightable elements, as Defendants urge the Court to do here.

The Second Circuit has itself emphasized the importance of not "whiting out" public domain or otherwise unprotectable elements. For example, in *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc*., 338 F.3d 127 (2d Cir. 2003), the Second Circuit reversed a district court decision that had explicitly factored out public domain elements incorporated into a rug design. The court held that the plaintiff's particular choice of which public domain elements to include, and modifications of some of those elements, was nearly exactly copied by the defendant. *Id.* at 135. The Second Circuit twice quoted Judge Learned Hand's maxim that "no plagiarist can excuse the wrong by showing how much of his work he did not pirate"[8] in holding that the district court had misapplied the "total concept and feel" test. *Id.* at 136–37.

As a result, the defendant's Persian carpet design (labeled "Bashian" below) was held to infringe the plaintiff's Persian carpet design (labeled "Tufenkian" below), despite a number of

---

[8] *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir.) (L. Hand, J.), *cert. denied*, 298 U.S. 669 (1936).

obvious points of disparity, and despite the fact that *all* the individual design elements – every leaf, stem and vine – were taken from public domain sources:

 

Similarly, in *LaChapelle v. Fenty,* 812 F. Supp. 2d 434 (S.D.N.Y. 2011), the court applied the "total concept and feel" analysis to find actionable similarity between a series of S&M-themed images by photographer David LaChapelle, one of which is shown on the left below, and scenes from a video by singer Rhianna, one of which is shown on the right below:



Even though the images differed, and were depictions of "common" S&M-inspired attire, the similarity was actionable.  *Id.* at 448.

Accordingly, the caselaw in this Circuit firmly establishes that the proper legal comparison for copyright infringement is between the "total concept and feel" of the parties' respective works in their entireties, with the focus on the similarities rather than the differences.  Contrary to Defendants' argument here, the works cannot be dissected into individual elements, however

---

[9] https://www.gmplaw.net/articles_public-domain.html [accessed 2/15/23]

[10] https://www.rap-up.com/2011/02/14/rihanna-sued-by-photographer-david-lachapelle-over-sm-video/ [accessed 2/15/23]

different some of those elements may be.  Under this governing standard, Plaintiff alleges substantial similarity and thus copyright infringement by the Infringing Collages.

### B.  Defendants' Recitation of Differences is Irrelevant

In an effort to avoid the obvious similarities of total concept and feel in the eyes of the ordinary observer, Defendants' brief goes into great detail about the differences between the parties' works.  The effort is misplaced, because at best the Defendants' enumerated differences serve only to show how much of the Defendants' works they "did not pirate," which is irrelevant. *Knitwaves*, 71 F.3d at 1004 ("These differences in detail, while requiring considerable ink to describe, do little to lessen a viewer's overwhelming impression that the two Lollytogs sweaters are appropriations of the Knitwaves sweaters.").

The "ordinary observer" test, focusing on similarities rather than differences, originated in *Peter Pan Fabrics, Inc. v. Martin Weiner Corp*., 274 F.2d 487, 489 (2d Cir. 1960) (L. Hand, J.) As in *Knitwaves*, literally every detail of the parties' respective fabric designs in *Peter Pan* is visibly different, and yet the defendant's work (shown below on the right) was still held to infringe:



Learned Hand explained in this decision that the proper standard is the overall appearance of the works to the "ordinary observer":

---

[11] http://www.edwardsamuels.com/illustratedstory/iscsmall/isc7small.htm [accessed 2/12/23]

> the ordinary observer, unless he set out to detect the disparities,
> would be disposed to overlook [the differences between the works]
> and regard their aesthetic appeal as the same.

*Id.* at 489. Clearly, a listing of differences between the two designs at issue in *Peter Pan* could run on for many pages, as it does in Defendants' brief here, but the length of that list is simply not relevant.

The Southern District of New York applied a similar analysis and reached a similar result in *Steinberg v. Columbia Pictures,* 663 F. Supp. 706 (S.D.N.Y. 1987), in which the movie poster for the Robin Williams film "Moscow on the Hudson," shown on the left below, was held to infringe the plaintiff's drawing for a New Yorker magazine cover, shown on the right below:



None of the specific individual details of the movie poster were the same as the corresponding elements of the plaintiff's drawing: the works depict different streets, different buildings, and even views from Manhattan facing different directions. Further, in weighing the overall appearance of the works to the ordinary observer, the court properly considered the defendant's imitation of the well-known "New Yorker" typeface as an element of the infringement, even though the typeface was obviously not original to plaintiff Steinberg. *Id.* at 711. Again the Court cited Learned Hand's "no plagiarist" axiom and stressed that "copyright infringement may

---

[12] https://dontworrybemappy.wordpress.com/tag/moscow-on-the-hudson/ [accessed 2/15/23]

occur by reason of a substantial similarity that involves only a ***small portion*** of each work." *Id.* at 713 (emphasis added).

The Southern District reached a similar conclusion in *Kisch v. Ammirati & Puris Inc.*, 657 F. Supp. 380, 384 (S.D.N.Y. 1987), where defendant's dimly-lit photo depicting a man in a suit jacket and tie holding a saxophone, gazing straight at the viewer while seated in a booth in front of a mural at the Village Vanguard jazz club, was held to infringe plaintiff's brightly-lit photo of a heavily made-up woman in a white shirt and bow tie, holding an accordion, looking off to the left of the frame from the same booth in front of the same mural at the Village Vanguard.  The mural, owned by neither party, occupies roughly the top third of each photo:



Despite the obvious differences in the works and the significant presence of unprotectable elements, the total concept and feel to the ordinary observer was held to be substantially similar. *Id.* at 383.  Under the applicable test, the alleged similarity between the parties' works cannot be decided at the pleading stage.

As law professor Michael Murray has summarized, the "present law" of the Second Circuit:

> Allow[s] the finder of fact the opportunity to consider the substantiality of the similarity between the total work of the plaintiff compared to the total work of the defendant.  The Second Circuit's rationale for employing a "total concept and feel" test is "[that the

---

[13] http://www.edwardsamuels.com/illustratedstory/iscsmall/isc7small.htm [accessed 2/12/23].

test] . . . is ***not simply a matter of ascertaining similarity between components viewed in isolation***."

*Copyright, Originality, and the End of the Scenes a Faire and Merger Doctrines for Visual Works,* 58(3) Baylor L. Rev. 779, 826 (2006)(*quoting Tufenkian*, 338 F.3d at 134)(emphasis added).

Accordingly, Prof. Murray concludes that "[i]f If a court takes the total concept and feel standard seriously it almost guarantees a jury trial unless the two works in their entirety are simply and manifestly dissimilar." *Id.* at 857.

## C.  Defendants' Fair Use Argument is Without Merit

Defendants assert the affirmative defense of fair use under 17 U.S.C. 107.  The defense lacks factual foundation at this stage and must be rejected.  Although Defendants fail to cite the relevant statutory language, Section 107 of the Copyright Act provides that a court "shall consider" the following factors when evaluating a claim of fair use:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

Defendants ignore the statute and focus their fair use argument entirely on the non-statutory concept of "transformative use." Defendants argue that because the Infringing Collages have a different "aesthetic character" and different "intent or purpose" (Def. Mem. at 19-20) than the Roberts Collages, they are by definition transformative and therefore fair use.  As an initial matter, the court cannot make a fair use determination without addressing the statutory factors – and Defendants have made no arguments regarding them.  Even as to transformative use, however, Defendants rely on a statement by Edwards, *id.*, to show their allegedly transformative "intent or purpose," but that statement is outside the pleadings.

18

Defendants also ignore the current law of the Second Circuit as to transformative use in the context of visual art. *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 38 (2d Cir. 2021), *cert. granted*, 142 S. Ct. 1412 (2022).  Instead, Defendants' foreshortened fair use argument relies heavily on superseded caselaw, here *Cariou v. Prince*, 714 F.3d 694 (2d Cir. 2013), but the Second Circuit in *Andy Warhol* expressly "clarified" *Cariou* in ways very unhelpful to Defendants.

For example, "it does not follow, however, that any secondary work that adds a new aesthetic or new expression to its source material is necessarily transformative." *Andy Warhol*, 11 F.4th at 38.  Moreover, there is no "bright line" rule of the sort Defendants here attempt to foist on this Court, to the effect that "any secondary work is necessarily transformative as a matter of law, if the secondary work has a different character, a new expression, or employs new aesthetics with distinct creative and communicative results." *Id.* (quotations omitted*)*.  Any attempt to find such a rule "stretches the [*Cariou*] decision too far." *Id.*  Without such a bright-line rule, Defendants fail to provide any support whatsoever for dismissal of this action.

Defendants fare no better under the statutory factors (which, again, they do not address). Defendants' use is commercial, and Plaintiff's collages are highly creative, so Defendants lose the first and second factor.  Defendants also lose the third factor because, as alleged, the Defendants' use of the copyrighted works is substantial and goes to the "heart" of the Roberts Collages, to the extent that third parties have confused the works, and knowledgeable observers of the art community have called the Defendants' appropriation "stunning" and "disturbingly obvious." (SAC ¶¶71, 72).  Finally, under the fourth factor, the parties' works are directly competitive, (SAC ¶22), and the burden of establishing a *lack* of market harm rests with the alleged infringer. *Andy Warhol*, 11 F.4th at 49.

All four statutory factors favor Plaintiff.  Defendants have come forward with no evidence whatsoever with regard to market harm, or any other fair use consideration, statements of counsel in briefs are not evidence, and Plaintiffs are not required to negate possible affirmative defenses in the drafting of a Complaint.  Accordingly, the lack of evidence itself precludes dismissal at this stage. Particularly in circumstances such as these, this Court should adhere to the holdings of the Southern District and the Second Circuit that deem fair use to be a "highly unlikely" ground on which to grant a motion to dismiss, *Graham v. Prince,* 265 F. Supp. 3d 366 (S.D.N.Y. 2017), and that courts should therefore be "cautious" about doing so.  *Wright v. Warner Books,* 953 F.2d 731 (2d Cir. 1991).  Certainly after *Andy Warhol*, the facts of this case do not so clearly favor fair use that a departure from such caution is warranted.

## IV.     Defendants' Motion To Dismiss The Plaintiff's Lanham Act Claim Should Be Denied

In addition to the flagrant copyright infringement, the Infringing Collages also violate Plaintiff's federal trademark rights.  The Lanham Act, at 15 U.S.C. 1125(a), prohibits the use of "any word, term, name, symbol, or device, or any combination thereof, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."  Defendants seek to dismiss the Lanham Act claim on two grounds: (1) that Plaintiff has not adequately identified the asserted trade dress of her collages, and (2) that the Roberts collages are aesthetically functional. Defendants are wrong on both counts.

### A.      Plaintiff Adequately Identifies the Trade Dress

At the pleading stage, the Complaint has to do no more than state facts alleging a "plausible" claim for trade dress under the liberal notice pleading standard of Rule 8.  *Twombly,* 550 U.S at 570; *Tony Duquette, Inc. v. Michael Kors (USA), Inc.*, 2009 WL 10674145, at *5 (C.D.

Cal. Apr. 16, 2009).  Courts requires only that a plaintiff specify which features of the alleged trade dress are distinctive and how they are distinctive.  *Nespresso USA, Inc. v. Peet's Coffee, Inc.*, 2023 WL 374980, at *9 (S.D.N.Y. Jan. 24, 2023); *Shevy Custom Wigs, Inc. v. Aggie Wigs*, 2006 WL 3335008, at *5 (E.D.N.Y. Nov. 17, 2006).  Beyond putting defendants on notice of the claims, "there is no requirement that Plaintiff plead its trade dress claim with further specificity." *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 635 F. Supp. 2d 632, 641 (E.D. Mich. 2008).

Plaintiff alleges with sufficient specificity the elements which constitute the distinctive character and scope of the Trade Dress.  (SAC ¶¶45-49).  The factual allegations "allow the Court to compare those elements in the [Roberts Collages] with the same elements in [the Infringing Collages] and determine the similarities." *Texas Chicken & Burgers, LLC v. NYQ Prop., LLC*, 2018 WL 6718843, at *4 (E.D.N.Y. Nov. 1, 2018); *Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 522–23 (S.D.N.Y. 2014) (allegations of "distinctive off-center asymmetric design comprising a large center jewel or piece with the size and/or quantity of pendants on one side being greater than the other side" sufficient to sustain trade dress claim). Plaintiff also attaches a number of photographs as exhibits to the Complaint which demonstrate "how the combination of the . . . elements create the Trade Dress." *Nespresso*, 2023 WL 374980, at *9.

Plaintiff also alleges how the elements are distinctive, in this case, because they create a distinctive overall visual impression that serves as a source identifier for the Roberts Collages and because the combination of elements is unlike the appearance of any other competing series of collages.  (SAC ¶¶50-51).  "At the pleading stage this is sufficient to satisfy the first element of a trade dress claim." *Nespresso*, 2023 WL 374980, at *9 (sustaining claim based on allegations that trade dress is distinctive because it is "unique and iconic").

21

Defendants' argument that Plaintiff "does not . . . articulate the elements of her work" ignores the plain language in the Complaint (SAC at ¶¶45-51), and Defendants do not cite a single case in which a description of trade dress similar to that contained in the Complaint was dismissed at the pleading stage.[14]  Moreover, for the reasons discussed above, Defendants' factual assertions concerning purported "ubiquitous" elements of "thousands" of Black American works (Def. Mem. at page 21-22) are off-limits at the pleading stage.  *Friedl*, 210 F.3d at 83-84.

Defendants' argument that Plaintiff's trade dress is an unprotectable idea or concept also fails.  Courts in analogous cases have found protectable trade dress in visual art.  *Romm Art*, 786 F. Supp. at 1129, 1137 (enjoining the "selling of certain limited editions and fine art posters" that had the same "distinctive style and appearance" and "overall impression" as plaintiff's series of fine art works "the placement of figures in each of the pictures examined, the physical attributes of his women, the depiction of women sitting and reclining, [and] their characteristic clothing"); *Hartford House Ltd. v. Hallmark Cards, Inc.*, 647 F. Supp. 1533 (D. Colo. 1986) (protecting "artist's rights in his or her creation" against confusingly similar products); *Ruolo v. Russ Berrie & Co., Inc.*, 886 F.2d 931 (7th Cir. 1989) (overall appearance of a line of greeting cards held to be protectable trade dress); *Hughes v. Design Look Inc.*, 693 F.Supp. 1500 (S.D.N.Y. 1988) (fine art poster calendar held to be protectable trade dress).[15]

---

[14] The caselaw on which Defendants rely involve situations where the plaintiff did not identify either the elements of the alleged trade dress or how they were distinctive.  *Rosenshine v. A. Meshi Cosms. Indus. Ltd.*, 2020 WL 1914648, at \*9 (E.D.N.Y. Mar. 30, 2020) (complaint did not articulate any "elements of their product design"); *Eliya, Inc. v. Steven Madden, Ltd.*, 749 F. App'x 43, 47 (2d Cir. 2018) (complaint fails to allege any "explanation as to how [elements of trade dress] are distinctive").  Defendants also cite *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380–81 (2d Cir. 1997), which decided a preliminary injunction motion (where a plaintiff must establish probability, not mere possibility, of irreparable harm).  *Romm Art Creations Ltd. v. Simcha Int'l, Inc.*, 786 F. Supp. 1126, 1133 (E.D.N.Y. 1992).  Moreover, the only description of the alleged trade dress was "site furniture which is at once massive, yet appears to float."  *Landscape Forms*, 113 F.3d at 382.  Based on Defendants' own authority, Plaintiff has stated a claim.

[15] Defendants rely on *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 597 (E.D.N.Y. 2017), where the court dismissed a claim "because the alleged trade dress is aesthetically functional."  Plaintiff's Trade Dress is not.  *See infra*, Section IV(B).  *Bubble Genius* also relies in part on *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d

### B.      The Trade Dress is not Aesthetically Functional

The Supreme Court has held that trade dress is deemed "functional" only when competitors would suffer a "significant non-reputation related disadvantage" if they could not use it, *e.g.* where the feature is essential to the use or purpose of the product, or affects its cost or quality. *Qualitex v. Jacobson Prods*, 514 U.S. 159, 165 (1995); *see also TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 33 (2001) (functionality test is whether trademark protection would significantly hinder competition); *Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1272 (10th Cir. 1988) ("whether the protection of the [feature] would hinder competition or impinge upon the rights of others to compete effectively."). "Because functionality is a question of fact . . . it is often premature to conclude that a plaintiff has failed to establish functionality at the motion to dismiss stage." *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, 352 F. Supp. 3d 265, 278 (S.D.N.Y. 2018) (citation omitted).

Plaintiff sufficiently alleges that the Trade Dress is not functional because it is unlike the appearance of numerous other competing series of collages, including series by artists other than Edwards that are marketed by Beavers and RBG, and because the specific appearance of the Roberts Collages does not confer a significant, non-reputational advantage over alternative designs for collages. (SAC ¶¶49-50). Moreover, the record here shows no evidence that any collage creator has been or would be hindered in competing effectively in the market for collages, or even collages of Black children, without using the distinctive combination that makes up the Trade Dress.

---

27, 31 (2d Cir. 1995), which decided a preliminary injunction and not a motion to dismiss. Even so, the Second Circuit recognized that "the concrete expression of an idea in a trade dress has received protection," including "non-occasion emotional messages concerning love, personal relationships, and other similar subjects, superimposed on watercolor or airbrush artwork that generally had a landscape motif or nature theme," and "beige, single-face (no fold) cards containing sentimental verses and frequently using ellipses . . . with brown ink." *Id.* at 32–33 (*citing Hartford House*, 846 F.2d at 1269; *Roulo*, 886 F.2d at 935). Finally, *Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*, 916 F.2d 76, 78 (2d Cir. 1990) is not instructive because the Second Circuit was focused on functionality in considering a likelihood of success on the merits and not whether the plaintiff simply stated a cause of action.

Defendants offer no evidence to show that the particular combination of features affects the cost or quality of the goods or is "essential" to their use or purpose.

Defendants rely on *Christian Louboutin S.A. v. Yves Saint Laurent America Holding Inc.*, 696 F.3d 206 (2d Cir. 2012) for their argument that the Trade Dress is "aesthetically functional." But aesthetic functionality, like utilitarian functionality, is an affirmative defense, thus the burden of establishing it falls on Defendants. *Id.* at 219. Defendants fail to apprise the Court of any *evidence* that protecting Plaintiff's trade dress would "***significantly*** undermine[ ] competitors' ability to compete in the relevant market" as *Christian Louboutin* requires, by a "limiting the range of adequate alternative designs." *Id.* at 221 (emphasis original). Indeed, Defendants cannot identify the relevant market, much less show that it would be significantly impaired by recognizing Plaintiff's Trade Dress rights. For this reason, the Second Circuit recognizes that functionality – including aesthetic functionality – is "highly fact specific." *Id.* The issue is thus unsuited for determination under Rule 12. Further, Defendants ignore that the Second Circuit *protected* the plaintiff's red shoe sole as trade dress, but merely reduced the scope of that protection to instances in which the sole contrasts in color with the rest of the shoe. *Id.* at 212.

Consequently, because the Complaint sufficiently identifies the Trade Dress and because the Trade Dress is not functional, the Roberts Collages are also eligible for protection under the Lanham Act. The Eastern District of New York protected similar trade dress in *Romm Art*, where the court issued an injunction under the Lanham Act against the "marketing and selling of certain limited editions and fine art posters" that had the same "distinctive style and appearance" as a series of fine art works created by plaintiff. 786 F. Supp. at 1131. The "look" of the plaintiff's works served, in other words, as a trademark for plaintiff:



The defendant's posters (below right), created "the same overall impression" to a sufficient degree that the court ordered a preliminary injunction against the sale of those posters:

 

The court held that similarity existed based on examining "the color patterns and shading of the [plaintiff's] works, the placement of figures in each of the pictures examined, the physical attributes of his women, the depiction of women sitting and reclining, their characteristic clothing vis-a-vis those portrayed by [defendant]," and that "[i]n light of the fact that the . . . patterns are not dictated by function, and that a variety of patterns is possible, the similarity of the patterns is striking." *Id.* at 1137-1138. The same analysis applies here except Plaintiff's burden to state a claim is much lower.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety.

---

[16] Jane C. Ginsburg, *Exploiting the Artist's Commercial Identity: The Merchandizing of Art Images*, 19 Colum.-VLA J.L. & Arts 1, 14-15 (1995), https://scholarship.law.columbia.edu/cgi/viewcontent.cgi?article=4657&context=faculty_scholarship (black and white version).

[17] *Id.*

Dated:  February 15, 2023

Respectfully submitted,

**REITLER KAILAS & ROSENBLATT LLP**

By: *s/ Robert W. Clarida*
    Robert W. Clarida
    Brett Van Benthysen
    885 Third Avenue, 20th Floor
    New York, NY 10022
    Tel: (212) 209-3045
    rclarida@reitlerlaw.com
    bvanbenthysen@reitlerlaw.com
    *Counsel for Plaintiff Deborah Roberts*