UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DEBORAH ROBERTS,

                                    Plaintiff,

                    v.

RICHARD BEAVERS GALLERY, RICHARD
BEAVERS, AND LYNTHIA EDWARDS,

                                    Defendants.

**MEMORANDUM AND ORDER**

22-cv-4516 (LDH) (TAM)

LASHANN DEARCY HALL, United States District Judge:

Deborah Roberts ("Plaintiff") brings the instant action against Richard Beavers Gallery (the "Gallery"), Richard Beavers ("Beavers"), and Lynthia Edwards ("Edwards") (collectively "Defendants"), asserting claims for copyright infringement under the Copyright Act, 17 U.S.C. § 106, and trade dress infringement under the Lanham Act, 15 U.S.C. § 1051. Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's second amended complaint in its entirety.

## BACKGROUND[1]

Plaintiff is an American visual artist whose collages are highly sought after by museums and collectors. (Second Am. Compl. ("SAC") ¶ 1, ECF No. 18.) Plaintiff regularly sells her collages for significant sums of money in both the primary and secondary markets at prestigious galleries and art fairs in the United States and internationally. (*Id.* ¶¶ 1–2, 53.) Plaintiff's collages are also featured in the collections of museums across the country, including in the San

---

[1] The following facts are taken from Plaintiff's second amended complaint and, unless otherwise indicated, are assumed to be true for purpose of the memorandum and order.

Francisco Museum of Modern Art, the Brooklyn Museum, the Los Angeles County Museum of Art, the Studio Museum in Harlem, the Whitney Museum of American Art, and the Institute of Contemporary Art in Boston.  (*Id.* ¶¶ 1–2.)  Plaintiff has received media commentary and coverage from the New York Times, Vice Magazine, and New York Magazine, and has also received multiple awards and grants for her work.  (*Id.* ¶ 5.)

Plaintiff's collages are fixed in a tangible medium of expression, where she "combine[s] found and manipulated fragments of photographs and fabric swatches with hand drawn and painted details, and feature[s] Black adolescents as subjects, either individually or in small groupings, set against solid, unpatterned backgrounds."  (*Id.* ¶¶ 3, 32.)  Plaintiff's collages also combine the following elements: "(1) subject matter featuring Black children or adolescents, either individually or in small groupings; (2) black-and-white or high-contrast photographic fragments of facial features, hair, arms, legs, hands and feet, assembled in angular, unnatural arrangements; (3) expressive hand gestures; (4) colorful, patterned fabric swatches; (5) hand-drawn or hand-painted details; and (6) plain, unpatterned backgrounds."  (*Id.* ¶¶ 8, 11, 48.) Plaintiff alleges that she has a distinctive, widely recognized, non-functional, unregistered trade dress in the collages.  At issue in this case is a series of Plaintiff's collages, referred to as the "Roberts Collages," including those registered in the U.S. Copyright Office and owned by Plaintiff (the "Registered Collages").  (*Id.* ¶ 6.)

Defendant Richard Beavers sells art in Brooklyn, New York through Defendant Richard Beavers Gallery.  (*Id.* ¶¶ 17–22.)  On April 13, 2020, Beavers approached Plaintiff about selling her collages at his gallery and commented that "so many of my clients have you on their wish list of artists whose work they would like to acquire for their collections."  (*Id.*)  Plaintiff declined. (*Id.* ¶ 23.)  Subsequently, Beavers arranged to have another artist, Defendant Lynthia Edwards,

discontinue her previous artistic practice so that she could create and sell collages similar to Plaintiff's collages (the "Gallery Collages"). (*Id.* ¶¶ 23–24.)

As early as June 2020, Beavers and the Gallery publicly displayed and sold or offered to sell to the public the Gallery Collages. (*Id.* ¶ 38.) According to the Complaint, the Gallery Collages closely mimic the Roberts Trade Dress, including incorporating the same photographic source material Plaintiff selected, included and used in her Registered Collages. (*Id.* ¶¶ 43, 57–58.) Defendants aggressively marketed and sold the Gallery Collages to hotel chains and to customers at high-profile national art fairs, where Plaintiff also promoted and sold the Roberts Collages. (*Id.* ¶¶ 59–60.) Plaintiff alleges that Defendants had a reasonable opportunity to view the Roberts Collages prior to creating the Gallery Collages because photographs of the Roberts Collages were widely disseminated. (*Id.* ¶ 37.)

Plaintiff alleges that Defendants' imitation of the Roberts Collages has created actual confusion among members of the relevant public. (*Id.* ¶ 61.) For example, Plaintiff received several messages from third parties via social media who mistakenly believed that some of the Gallery Collages were Roberts Collages. (*Id.* ¶¶ 62–63, 65–66 and 76.) One third party mistakenly tagged Plaintiff in an Instagram photo that depicted a Gallery Collage, believing that the collage was Plaintiff's work. (*Id.*) Two other individuals sent messages to Plaintiff explaining that they encountered a Gallery Collage at an art fair, believing it to be Plaintiff's collage. (*Id.*) The confusion between the trade dress of the Gallery Collages and the Roberts Collages were also discussed in the media. (*Id.* ¶ 68.) In Sugarcane Magazine, an author published an article titled "Ethics and Controversy: Reviewing Appropriation in Black Art," documenting the "notable uptick in the display of lesser-known artists whose styles were almost identical to prominent African-American artists." (*Id.* ¶¶ 69–71; *see also* SAC Ex. 22, ECF No.

18–22.)  This article singled out the Gallery Collages and referred to them as mere "shadow play" of Plaintiff's work and "perhaps the most disturbing and disturbingly obvious" example of appropriation.  (*Id.*)

Plaintiff claims that the confusing similarity between the Roberts Collages and the Gallery Collages have already caused, and will continue to cause, irreparable loss of reputation and goodwill to Plaintiff because customers will cease to distinguish between the Roberts Collages and the Gallery Collages and might falsely ascribe the "poor quality" of the Gallery Collages to Plaintiff.  (*Id.* ¶ 77.)  Plaintiff further claims that Defendants' use of Plaintiff's trade dress misrepresents the nature and characteristics of the Gallery Collages and will harm legitimate collectors of the Roberts Collages by diluting the distinctiveness of the trade dress in the marketplace.  (*Id.* ¶¶ 84–90.)

Upon learning of the existence, marketing and sale of the Gallery Collages, Plaintiff's counsel contacted Defendants about the alleged infringement.  (*Id.* ¶¶ 40–41.)  Beavers responded that he "absolutely see[s] the similarities and influence" between the Roberts Collages and the Gallery Collages, yet still continues to market and sell the Gallery Collages and targets the same customers and retail channels that Plaintiff uses.  (*Id.* ¶¶ 7, 39, 41, 82–85.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of defendants' liability for the alleged misconduct.  *Id.*  While this standard requires more than a "sheer possibility" of defendants' liability, "[i]t is not the [c]ourt's

4

function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Id.; Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the [c]ourt must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the court must accept the factual allegations of the complaint as true." *Morris*, 37 F. Supp. 2d at 565 (citations omitted).

## I.    COPYRIGHT INFRINGEMENT

The United States Constitution affords copyright protection to "promote the Progress of Science and useful Arts." U.S. Const., Art. I, Section 8, cl. 8. Copyright protection "is based on the 'economic philosophy . . . that encouragement of individual effort by personal gain is the best way to advance public welfare.'" *TCA Television Corp. v. McCollum*, 839 F.3d 168, 177 (2d Cir. 2016) (quoting *Mazer v. Stein*, 347 U.S. 201, 219 (1954)). The Copyright Act furthers this principle "by granting authors a limited monopoly over (and thus the opportunity to profit from) the dissemination of their original works of authorship." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 95 (2d Cir. 2014). That is, "[t]he Copyright Act confers upon authors certain enumerated exclusive rights over their works during the term of the copyright, including the rights to reproduce the copyrighted work and to distribute those copies to the public," and the "exclusive right to prepare certain new works—called 'derivate works'—that are based upon the copyrighted work." *Id.* (citations omitted).

Of course, copyright law has its limitations. Because "'all creative works draw on the common wellspring that is the public domain,'" "'raw materials' of art, like colors, letters, descriptive facts, and standard geometric forms, as well as previous creative works that have fallen into the public domain" are not protected. *McDonald v. West*, 138 F. Supp. 3d 448, 454 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016) (quoting *Tufenkian Imp./Exp. Ventures,*

*Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 132 (2d Cir. 2003)).  Likewise, "generic and generalized character traits, such as race, gender, and hair color are not protectable." *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 67 (2d Cir. 2020).  Neither is the subject matter of a work protected.  *See Kaplan v. Stock Market Photo Agency, Inc.*, 133 F. Supp. 2d 317, 323–26 (S.D.N.Y. 2001) (finding that the subject matter of a businessperson contemplating a leap from a tall building onto the city street below rather than the expression of this subject matter, is not protectable); *see also Kisch v. Ammirati & Puris Inc.*, 657 F. Supp. 380, 382 (S.D.N.Y. 1987) (stating that the artist's original conception of a subject in a photograph, rather than the subject itself, is a copyrightable element).  In addition, certain parts of the human body are equally not protectable elements.  *See, e.g., Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 116 (2d Cir. 1998) (noting that "the basic pose of a nude, pregnant body and the position of the hands, if ever protectable, were placed into the public domain by painters and sculptors long before" other artists have done so).  Likewise, copyright law does not protect ideas, concepts, styles and processes, but only the "original expression" of these ideas, concepts, styles and processes.  *See Attia v. Soc'y of New York Hosp.*, 201 F.3d 50, 54 (2d Cir. 1999) (citations omitted) ("It is a fundamental principle of our copyright doctrine that ideas, concepts, and processes are not protected from copying."); *Mattel, Inc. v. Goldberger Doll MFG. Co.*, 365 F.3d 133, 136 (2d Cir. 2004).  So, "even though a particular color is not copyrightable, the author's choice in incorporating color with other elements may be copyrighted." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 271 (2d Cir. 2001).  "Original" in this context means the work was independently created by the author and possesses some minimal degree of creativity.  *See id.* at 268; *see also Oriental Art Printing, Inc. v. Goldstar Printing Corp.*, 175 F. Supp. 2d 542, 546 (S.D.N.Y. 2001), *aff'd in part, appeal dismissed in part sub nom. Oriental Art Printing Inc. v. Goldstar Printing Corp.*, 34

F. App'x 401 (2d Cir. 2002) (finding that "copyright protection extends only to those components of the work that are original to the creator.")

Defendants argue that Plaintiff's copyright claim should be dismissed because the Roberts and Gallery Collages each contain individual elements that are not unique to Plaintiff's work and are not copyrightable. (Defs.' Mem. Supp. Mot. to Dismiss ("Defs.' Mem.") at 5–10, ECF No. 22.) It is true that many of the individual elements of Plaintiff's work—such as the "subject matter featuring Black children", "plain, unpatterned backgrounds", and third-party source material, (SAC ¶¶ 3, 48)—clearly are not protectable under copyright law. *See McDonald*, 138 F. Supp. 3d at 454 ("the 'raw materials' of art, like colors, letters, descriptive facts, and standard geometric forms" cannot be copyrighted). That said, Plaintiff plausibly alleges that the Roberts Collages contain at least some protectable elements. For example, Plaintiff describes some of her collages as "assembled in angular, unnatural arrangements." (*Id.* ¶ 48.) And, "viewed in [their] entirety," the Roberts collages "create[] a distinctive overall visual impression that is uniquely associated" with Plaintiff, "serv[ing] as a source identifier for the Roberts Collages." (*Id.* ¶ 49.) These allegations describe Plaintiff's creative expression, not merely repurposed elements from the public domain or third-party sources. *Rogers v. Koons*, 960 F.2d 301, 308 (2d Cir. 1992) ("What is protected is the original or unique way that an author expresses those ideas, concepts, principles or processes."); *see Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 455 (S.D.N.Y. 2005) (holding that a photograph of a man wearing a white T-shirt, athletic pants, and jewelry, posed against a cloudy sky was protectable and that the "relatively unusual angle and distinctive lighting," and the "posing man against sky," with a wardrobe and look that the subject adopted at the photographer's express instruction, all contributed to the photograph's originality).

However, this does not end the Court's inquiry. Where collages are made up of both original and nonoriginal elements, the original elements may receive copyright protection and an infringer may be liable where the infringer's work is substantially similar to the copyrighted work. *See LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 440–42 (S.D.N.Y. 2011) (comparing the substantial similarity of an allegedly infringing photograph to the protectable elements of another photograph).

A plaintiff asserting a copyright infringement claim must establish that there was "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Abdin*, 971 F.3d at 66 (citation omitted). For the second prong, a plaintiff must demonstrate that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57, 63 (2d Cir. 2010) (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)). At the motion to dismiss stage, the Court may assume that actual copying by the defendants occurred, and need only determine whether substantial similarity exists between a defendant's work and the protectible elements of plaintiff's work. *Id.*

The issue of substantial similarity "presents an extremely close question of fact," which is "traditionally reserved for the trier of fact." *Id.* at 64 (citation omitted). However, it is "entirely appropriate for a district court to resolve that question as a matter of law, 'either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar.'" *Gaito*, 602 F.3d at 63 (citation omitted). Where "the works in question [] attached to a plaintiff's complaint . . . it is entirely appropriate for the district court to consider the similarity

8

between those works in connection with a motion to dismiss, because the court has before it all

that is necessary in order to make such an evaluation." *Id.* at 64.  "[T]he works themselves

supersede and control contrary descriptions of them" including "any contrary allegations,

conclusions or descriptions of the works contained in the pleadings." *Id.* (citations omitted).

If the district court "determines that the two works are not substantially similar as a

matter of law, the district court may properly conclude that the plaintiff's complaint, together

with the works incorporated therein, do not plausibly give rise to an entitlement to relief."

*McDonald*, 138 F. Supp. 3d at 454 (quoting *Gaito*, 602 F.3d at 64).  The Second Circuit has

articulated two tests that are typically employed to determine whether two works are

substantially similar: the "ordinary observer test" and the "more discerning observer test."  The

"ordinary observer test" determines whether "an ordinary observer, unless he set out to detect the

disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same."

*Abdin*, 971 F.3d at 66.  In other words, courts applying the ordinary observer test must ask

whether "an average lay observer would recognize the alleged copy as having been appropriated

from the copyrighted work."  *Knitwaves, Inc. v. Lollytogs Ltd. Inc.*, 71 F.3d 996, 1002 (2d Cir.

1995) (citations omitted).  However, where "a work incorporates unprotectible elements from the

public domain, we apply a 'more discerning' observer test."  *Abdin*, 971 F.3d at 66 (quoting

*Boisson v. Banian, Ltd.*, 273 F.3d 262, 272 (2d Cir. 2001)).  This test requires that there be a

"substantial similarity between those elements, and only those elements, that provide

copyrightability to the alleged infringed work."  *Id.* (internal quotations and alterations omitted).

Here, the more discerning test applies.

The parties disagree on how the test should be employed.  Defendants argue that the

Court must consider what elements are not protectible, exclude and completely remove those

unprotectible elements from consideration, and then only compare the original, protected elements. (Defs.' Mem. at 16; Defs.' Reply Mem. Supp. Mot. Dismiss at 4–5, ECF No. 24.) Plaintiff on the other hand argues that application is too narrow, and that the "more discerning" test instead requires a comparison of the "total concept and feel" of the parties' respective works in their entireties, and that courts can nonetheless consider unprotectible elements to the extent they are arranged or selected in an original way. (Pl.'s Opp'n at 9–14.) On this question, the Court agrees with Plaintiff.

In applying the "more discerning" test, the Second Circuit "disavowed any notion that '[courts] are required to dissect [the works] into their separate components and compare only those elements which are in themselves copyrightable.'" *Gaito*, 602 F.3d at 66 (quoting *Knitwaves, Inc.,* 71 F.3d at 1002). Rather, courts in this circuit must "compar[e] the contested design's 'total concept and overall feel' with that of the allegedly infringed work." *Tufenkian*, 338 F.3d at 133. Ultimately, the Court must be guided by comparing the 'total concept and feel' of the contested works. *Gaito*, 602 F.3d at 66. "[T]he defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art—the excerpting, modifying, and arranging of unprotectible components are considered in relation to one another." *Id*. (quoting *Tufenkian*, 338 F.3d at 134) (internal quotations and alterations omitted).

Turning to the works themselves, Defendants argue that the Gallery Collages are not substantially similar to the Roberts Collages because the works consist of (1) different subjects; (2) different number of subjects; (3) different poses; (4) different arrangements; (5) different hairstyles; (6) different clothing; (7) different colors and patterns; and (8) total concept and feel.

10

(Defs.' Mem. at 18.)  The Court agrees with Defendants as to the collages in Exhibits 5–7, 10, 12, 14, and 16–18.[2]  The Court disagrees with Defendants, however, as to the other six of the collages in Exhibits 4, 8–9, 11, 13 and 15.

### a.  Exhibit 4

Each collage depicts a young, adolescent black child, there is only one subject in each collage and the poses and arrangements are similar.  Each subject is depicted as having tilted heads, their faces consisting of fragments of different facial features from other third-party subjects, and the placement of expressive hand gestures placed across the body.  That is, each collage portrays a rather somber tone, with each subject containing a neutral facial expression and each subject placed against a clear, plain gray background.  In addition, each artist uses a black and off-white pin-stripe pattern on the clothing.  There are admittedly some differences.  For example, the Roberts Collage's subject contains a braided hairstyle with a bow and clip whereas the Gallery Collage contains what appears to be a hairstyle consisting of round bantu knots individually parted across the subject's head.  In addition, that the Roberts Collage depicts the full body of the adolescent, whereas the Gallery Collage only shows the upper half of the subject's body.  Nevertheless, the total concept and feel of each collage is sufficiently similar to defeat a motion to dismiss.

---

[2] There are several images attributed to Defendant Edwards in Exhibits 4-9, 12, 14, 17 and 24 that do not contain a title.  (*See* ECF Nos. 18-4-18-9, 18-12, 18-17, 18-24.)  In addition, three of Edwards's works are included in Exhibits 11, 13, and 16, but are not listed in the SAC ("Friends", Ex. 11, ECF No. 18-11; "Church Girls", Ex. 13, ECF No. 18-13 and "Liberty Stands with Them", Ex. 16, ECF No. 18-16.)  The Court will still assess, however, these three additional collages attached to the second amended complaint.  The Court further notes that Plaintiff has identified some infringing collages without identifying which of the Roberts Collages it allegedly copied.  (*See, e.g.*, "Pose for the Picture" and "Look", Ex. 24, ECF No. 18-24.)  Because none of the Roberts Collages are identified in comparison to "Pose for the Picture" or "Look", the Court cannot, and will not, conduct a side-by-side comparison of these two exhibits.

### b.  Exhibit 8

Each collage depicts a similar adolescent black girl, with only one subject in each collage.  The poses and arrangements are also very similar.  Each subject is positioned as facing forward, their faces are covered with an off-white patch, and their lips are slightly open.  Each child's hands are expressive in some way, either as a fist or as holding an object.  Each subject in the collage has a pleated, neutral-colored top, and floral bottom, and each subject is placed against a gray background.  These collages are different in that the Roberts Collage contains brighter, more stark colors, and the subject's hairstyle consists of braids and barrettes, whereas the Gallery Collage has softer, muted colors and the subject's hair is wrapped in large rollers.  However, as with Exhibit 4, the total concept and feel of these images are substantially similar.  Each collage gives off a rather neutral, somber feel.

### c.  Exhibit 9

Each collage depicts a similar adolescent black girl set against a gray background, with only one subject in each collage.  The poses and arrangements are also very similar.  Each subject is positioned as facing forward, their lips are slightly open, and wears a pleated top with a floral design appearing in the outfit.  These collages are different in that the Gallery Collage's subject furrows her eyebrows, the top contains floral colors, and she has rollers in her hair, whereas the Roberts Collage's subject has a neutral facial expression, an eye patch covering her eye, and a braided hairstyle.  However, these differences, along with the placement of a random pair of blue scissors in the Gallery Collage, do not overcome the total concept and feel of both collages.  Again, each collage portrays subjects who are in similar states of confusion and the feel is more serious and somber.

### d.  Exhibit 11

Each collage features a young black girl.  Although the backgrounds and attire differ, the poses of the girl in each collage are nearly identical.  In each, the girl has one hand raised with her palm facing forward.  Additionally, the girl in each collage has prominent colored bows in her hair.  As with Exhibit 9, the differences in background color, hair style, and attire are overshadowed by the similar physical dispositions of the collages' subjects.

### e.  Exhibit 13

Each collage features the image of a little girl with colorful accessories in their hair. Moreover, in both images, the girls wear stripped shirts.  The posture of the subjects is also similar: the arms of each subject obstruct the torso in a similar fashion, each subject has an expressive face and a head disconnected from their body. The hands are prominent hands, with colored, painted fingernails. As with Exhibits 9 and 11, the differences in background color, hair style, and attire are overshadowed by the similar physical dispositions of the collages' subjects.

### f.  Exhibit 15

Each collage depicts a black adolescent girl set against a gray background, with only one subject in each collage.  The poses and arrangements are strikingly similar.  Each subject is positioned as facing forward, with their heads and bodies tilted to the right.  The subjects' hands and arms are placed together, although the hands of the subject of the Roberts Collage are closed together.  Each subject has a muted, neutral-colored top and patterned skirt bottom, and each has on a hat.  Now, the Roberts Collage barely contains any color other than the color of the hat, which is yellow, blue and black, and her face again consists of fragments of different faces placed together.  The Gallery Collage, on the other hand, contains a variety of red, yellow, blue,

13

brown and green colors in her skirt, along with a red rose as a hat.  However, like the other exhibits above, these collages each have the same somber, neutral, somewhat melancholy feel.

*                    *                    *

Given the similarities in the "total concept and feel" between the collages in Exhibits 4, 8–9, 11, 13 and 15, the Court concludes that the Plaintiff adequately alleges that the Gallery Collages are substantially similar to her own.  *See Knitwaves*, 71 F.3d at 1004, 1005 n.5 (finding substantial similarity, despite significant differences, where the color scheme, design, and positioning of two sweaters were "almost identical").  To the contrary, the collages in Exhibits 5–7, 10, 12, 14, and 16–18 are so dissimilar on their face that "no reasonable jury, properly instructed, could find that the two works are substantially similar."  *Gaito*, 602 F.3d at 63 Therefore, the Court declines to grant Defendants' motion to dismiss the second amended complaint on that basis.

## II.    TRADE DRESS INFRINGEMENT

Section 43(a) of the Lanham Act, codified as 15 U.S.C. 1125(a), provides for civil liability for "[a]ny person who . . . uses in commerce any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."  15 U.S.C. 1125(a)(1)(A).  Of particular relevance here, Section 43(a) of the Lanham Act extends protection to trade dress, which refers to how "a product looks, its total image, or its overall appearance," and includes "a product's composition and design, including size, shape, color, texture and graphics."  *Mana Prods., Inc. v. Columbia*

14

*Cosmetics Mfg., Inc.*, 65 F.3d 1063, 1068 (2d Cir. 1995) (citations and internal quotations omitted).

To plead a claim of trade dress infringement, a plaintiff must offer "a precise expression of the character and scope of the claimed trade dress" and articulate the elements of their product design with specificity to be afforded trade dress protection. *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F. App'x 389, 391 (2d Cir. 2003) (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)). A plaintiff must also allege that the claimed trade dress is non-functional, the claimed trade dress has secondary meaning, and there is a likelihood of confusion between the plaintiff's [product] and the defendant's [product]. *Id.*

That said, to survive a motion to dismiss, a plaintiff must allege "the specific elements which comprise its distinct dress" because "courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market," or "shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection." *Eliya, Inc. v. Steve Madden Ltd.*, 749 Fed. App'x 43, 46–47 (2d Cir. 2018) (quoting *Landscape Forms*, 113 F.3d at 381). Although trade dress protection may protect the "overall look" of a product, this does "not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress." *Id.* "[J]ust as copyright law does not protect ideas but only their concrete expression, neither does trade dress law protect an idea, a concept, or a generalized type of appearance." *Jeffrey Milstein v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995). "The level of generality at which a trade dress is described . . . may indicate that that dress is no more than a concept or idea," which the Lanham Act does not protect. *Id.* at 33. And, where, as here, a plaintiff seeks to protect an entire line of products or series, the court's "concern for protecting competition is acute," and a plaintiff faces the "particularly difficult challenge of

showing that the appearance of its several products is sufficiently distinct and unique to merit protection as a recognizable trade dress." *Landscape Forms*, 113 F.3d at 380.

Defendants contend that Plaintiff fails to allege a precise expression of the character and scope of the claimed trade dress because she did not articulate the elements of her work with sufficient specificity, and that the exhibits identifying her collages do not cure this deficiency. (Defs.' Mem. at 21.)  The Court agrees.

Plaintiff describes the her trade dress as a combination of the following elements:  "(1) subject matter featuring Black children or adolescents, either individually or in small groupings; (2) black-and-white or high-contrast photographic fragments of facial features, hair, arms, legs, hands and feet, assembled in angular, unnatural arrangements; (3) expressive hand gestures; (4) colorful, patterned fabric swatches; (5) hand-drawn or hand-painted details; [and] (6) plain, unpatterned backgrounds."  (SAC ¶ 48.)  Plaintiff further alleges that "viewed in its entirety, [her trade dress] creates a distinctive overall visual impression that is uniquely associated with [Plaintiff] and serves as a source identifier for the Roberts Collages."  (SAC ¶ 49.)  But, fatally, Plaintiff's description is nothing more than a laundry list detailing how her collages evince general concepts and present particular styles.

*Jeffrey Milstein*, cited by Defendants, is instructive here.  In *Jeffrey Milstein*, the plaintiff manufactured and sold greeting cards that consisted of a sheet of paper, folded vertically, cut to the outline of an animal, person or object shown in a colored photograph on the front panel of the card. *Jeffrey Milstein*, 58 F.3d at 29–30.  The greeting card used this die-cutting technique to make the photograph completely fill the front panel and the inside panels and a back panel were usually blank.  *Id.*  The greeting cards were packaged in clear cellophane bags.  *Id.*  Plaintiff alleged that defendant produced and sold tri-cut photographic greeting cards, where like

16

plaintiff's cards, the cards contained blank interiors and were packaged in clear cellophane wrapping. *Id.* According to the complaint, the trade dress at issue was "straight-on, strong photographic, glossy images of animals, persons or objects on die-cut cards that are cut without bleed of any kind," as well as containing a blank interior and cellophane wrapping as packaging. *Id.* at 33. Plaintiff asserted that its card design was unique because other die-cut cards have an antique look, are not as glossy, are not completely die-cut, or are made from drawings rather than from photographs. *Id.* The district court dismissed plaintiff's trade dress claim and plaintiff appealed. *Id.* at 34–35. The Second Circuit affirmed. *Id.*

The Second Circuit concluded that although plaintiff's products were novel in the greeting card industry, its trade dress did not qualify for protection because plaintiff sought protection for an idea or concept—die-cut photographic greeting cards. *Id.* at 33. The Second Circuit further found that "[j]ust as the first company to depict a heart and an arrow on Valentine's cards or to produce cards depicting tabby cats could not seek protection for those designs because they are concepts, defined abstractly, [] [plaintiff] cannot obtain protection for its general idea of creating cards out of die-cut photographs." *Id.* Instead, the Second Circuit found that the plaintiff's trade dress was "more properly viewed as a refinement on the die-cut greeting card design." *Id.*

Here, Plaintiff's trade dress infringement claim fails for similar reasons. Like the plaintiff in *Jeffrey Milstein*, Plaintiff seeks protection over a general style or concept, an abstract design depicting Black children and/or adolescents in a photo-collage. Although Plaintiff seeks protection over a specified series of collages, Plaintiff makes clear in her second amended complaint that her trade dress is not only depicted in Exhibits 1 and 4–18, but also in Exhibit 24, which consists of a variety of other collages that she does not seek copyright protection over.

(SAC ¶¶ 42, 45.)  Therefore, Plaintiff appears to be seeking trade dress protection over her general style.  While that collage-style may be novel, it is more appropriately viewed as refinement of the collage style in art, and she therefore cannot prevent other artists from using that style in their own art.  *See Jeffrey Milstein*, 58 F.3d at 33 ("Drawing the line between 'ideas' or 'concepts' on the one hand and 'concrete expressions' on the other" warrants a consideration of "the purpose of trade dress law: to protect an owner of a dress in informing the public of the source of its products without permitting the owner to exclude competition from functionality similar products," because "[t]he level of generality at which a trade dress is described . . . may indicate that that dress is no more than a concept or idea.")

Cases relied upon by the Plaintiff to persuade the Court to conclude otherwise are unhelpful.  (Pl.'s Opp'n at 21.)[3]  Curiously, Plaintiff cites to *Shevy Custom Wigs, Inc. v. Aggie WIGS et al*, No. 06-CV-1657, 2006 WL3335008, at *1 (E.D.N.Y. Nov. 17, 2006) for the proposition that courts require only that a plaintiff specify which features of the trade dress are distinctive and how.  (Pl.'s Opp'n at 21.)  But, the facts and holding of that case clearly undercut Plaintiff's argument.  There, the plaintiff described the distinctive features of the trade dress of her wigs and falls as containing "a specific lace band at the hairline of the wig or fall, a particular multidirectional part, including the specific size and shape of the part, a wefted stretch net, a layered style, the distribution of the hair and weight of the piece and the size and shape of the net."  *Shevy Custom Wigs, Inc.*, 2006 WL3335008, at *5.  In dismissing plaintiff's trade dress infringement claim, the court held that the plaintiff's distinctive features were too general.  *Id.* Specifically, the court found that the phrasing "specific lace band" and "particular multi-

---

[3] Plaintiff's cited cases also concern a plaintiff's claim for protection over much fewer products or works than those at issue here.  Here, Plaintiff alleges that her trade dress is exemplified not only in the 12 pieces shown in Exhibits 4–18, but also in numerous other series of collages depicted in Exhibit 24.

directional part" failed to describe what made these features unique, and that other "sweeping" descriptions, such as a "wefted stretch net," only identified categories of features rather than features themselves. *Id.* Likewise, Plaintiff's alleged elements here, such as "expressive hand gestures," "colorful, patterned fabric swatches," and "hand-drawn or hand-painted details," are just as general, and only identify categories of features.

Plaintiff also relies on *Texas Chicken & Burgers, LLC v. NYQ Property, LLC.* No. 17-CV-976, 2018 WL 6718843, at *1 (E.D.N.Y. Nov. 1, 2018). In *Texas Chicken*, the plaintiff operated over twenty restaurants in New York City and Philadelphia. *Id.* at *1. The plaintiff maintained a halal menu at each of its restaurants that used seven elements of décor at each of its restaurants, including placement of "(1) the name [] in large letters on a bright yellow sign; (2) a strip of red paint along the top and base of the sign; (3) a red awning; (4) brown wallpaper in the interior with different superimposed images and phrases; (5) red lights hanging from the ceiling; (6) hanging LED panels with menus listing and corresponding to the pictures of the food; and (7) full length windows with food images along the base." *Id.* at *1. By attaching photographs comparing the restaurants, the plaintiff claimed that the defendant, who operated a restaurant in New York City, mimicked the plaintiff's trade dress in several ways, including that the restaurant was painted in a similar bright yellow color with distinctive red strips along the top of the sign and base of the façade, the scale of the defendant's name and red awning were identical to that of plaintiff's restaurants, and the interior contained red ceiling lights and brown wallpaper. *Id.* at 2. The plaintiff further alleged that the defendant hired the same vendor to design and copy the look and feel of the plaintiff's restaurant. *Id.* In denying the defendant's motion to dismiss, the district court determined that the plaintiff's description of elements contained a precise

expression of the character and scope of its trade dress, allowing the court to compare those elements and determine similarities in the photographs. *Id.* at *4.

Unlike the plaintiff in *Texas Chicken*, however, where each of the elements together created a single specific expression through each of its restaurants, the elements pleaded here are more generalized and are expressed differently depending on the collage. Plaintiff's own exhibits demonstrate as much. The exhibits illustrate that the alleged elements come together to create different expressions, which confirms that Plaintiff seeks to use the Lanham Act to protect a concept, not a specific expression of that concept.

Plaintiff's reliance on *Int'l Diamond Importers, Inc. v. Oriental Gemco (NY) Inc.*, is also misplaced. 64 F. Supp. 3d 494 (S.D.N.Y. 2014). There, the plaintiff designed, manufactured and sold jewelry with precious stones. *Id.* at 502. The plaintiff's trade dress incorporated "a distinctive off-center design comprising a large center jewel or piece with the size and/or quantity of pendants on one side being greater than the other side." *Id.* The district court found that the plaintiff sufficiently alleged the scope of the specific trade dress, that the plaintiff only alleged trade dress infringement over four pieces, and that all of them possess these features. *Id.* at 522–23.

Here, Plaintiff alleges trade dress infringement over a far greater amount (at least twelve pieces), each of which do not possess all of the same features.[4] For example, it is unclear if the

---

[4] Plaintiff also cites to *Nespresso USA, Inc. v. Peet's Coffee, Inc.*, No. 22-cv-2209, 2023 WL 374980, at *1 (S.D.N.Y. Jan. 24, 2023). There, the plaintiff described its trade dress in the Original NESPRESSO Capsule as consisting of a combination of four distinct elements: a top that consisted of a cone with the tip removed, an opaque color, a circular bottom that is wider in diameter than the top of the capsule, and an inverted cone with the tip removed that is indented at the top. *Id.* The plaintiff also attached to the complaint a number of photographs demonstrating how the combination of the elements created the trade dress and how the trade dress maintained a consistent overall look and feel. *Id.* at *9. The plaintiff further alleged that the trade dress was distinctive because its capsule is "unique and iconic" while other third parties' capsules vary in shape and design and feature trade dresses that create different commercial impressions. *Id.* However, the district court there did not provide an analysis of why the pleading of these elements were sufficient such that the Court can make a comparison. Furthermore, unlike the instant case, the elements pleaded in *Nespresso* are much more specific in terms of the

subject matter in Exhibit 14 concerns an adolescent or child because there are no facial features depicted.  There are also no hands featured in the collage, and it is unclear whether there are any hand-drawn or hand-painted details in the photo.

Therefore, because Plaintiff fails allege a precise expression of the character and scope of her claimed trade dress, Defendants' motion to dismiss Plaintiff's claim for trade dress infringement is granted.[5]

## CONCLUSION

The Defendants' motion to dismiss Plaintiff's second amended complaint is GRANTED in part and DENIED in part.

SO ORDERED.

Dated: Brooklyn, New York
November 1, 2024

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge

---

specific shapes of the tops and bottoms of the capsule, but also how the features are distinctive.  *Id*.  The complaint in that case also contained photographs that showed a consistent overall look and feel of the capsules and each of the specific elements that make up the trade dress of the capsules, as opposed to the collages in this case, which consist of many more varied looks across collages.

[5] The Plaintiff also refers the Court to additional cases to argue that trade dress was found protectable in visual art and the same should be found here.  (Pl.'s Opp'n at 22.)  These cases are unhelpful to her.  As discussed above, the Court does not find that Plaintiff sufficiently pleads a precise expression but instead a general style.  The Court does not reach the question of a secondary meaning.  Therefore, the cases are irrelevant because the cases cited from this district, *Romm Art Creations Ltd. V. Simcha Intern, Inc.*, 786 F. Supp. 1126, 1134 (E.D.N.Y. 1992) and *Hughes v. Design Look Inc.*, 693 F. Supp. 1500, 1507–08 (S.D.N.Y. 1998), each concerned whether the trade dress at issue in both cases acquired secondary meaning and if there is a likelihood of confusion as to the source of the product. *Hartford House Ltd. v. Hallmark Cards Inc.*, 647 F. Supp. 1533, 1537-45 (D. Colo. 1986), addressed issues of functionality, secondary meaning and likelihood of confusion.

21